664 A.2d 427

**Kevin Michael MOORE**

v.

**Kathryn A. TSERONIS.**

**No. 1823, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Sept. 6, 1995.

William A. Saltysiak, McHenry, for appellant.

Angela M. Eaves, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for appellee.

Argued Before MOYLAN, BLOOM and FISCHER, JJ.

BLOOM, Judge.

This appeal arises from a motion filed in November 1993 by appellant, Kevin M. Moore, to decrease the amount of child support he pays to appellee, Kathryn Tseronis, for their three children.[1] On 23 June 1994, a special master for the Circuit Court for Montgomery County held a hearing on the motion. In her Report and Recommendation following that hearing, the master opined that appellant had voluntarily impoverished himself, and she recommended that appellant's child support obligation be decreased from $600 per month to $500 per month effective 1 February 1995. Appellant filed a motion seeking a rehearing, and appellee filed an answer opposing that motion. Appellant then filed exceptions to the Report and Recommendation. At a hearing on those exceptions, the court denied the exceptions and issued a judgment incorporating the master's recommendations. This appeal is from that decision.

Appellant presents the following issues for our consideration:

1. Whether the court below erred in finding that appellant is voluntarily impoverished.

2. Whether the court below erred in considering the potential income of appellant's current wife when calculating the amount of child support to be paid.

3. Whether the court below erred in denying appellant's motion for rehearing based on the perjured testimony of Tseronis.

---

1. The parties have one child together, Kaitlin, and, in 1988, appellant adopted appellee's two daughters, Kara and Kandis. Kara became eighteen years of age 17 January 1995.

## Facts

The parties were granted an absolute divorce in September 1990. The divorce decree incorporated the terms of the parties' voluntary separation and property settlement agreement, which required appellant to pay $600 per month as child support for the parties' three children. On 24 November 1993, appellant filed a motion for modification to decrease the amount of child support he pays for his children. At the hearing before the special master, appellant testified extensively about his recent move from Baltimore City to Garrett County, his employment status and prospects, and his income and other expenses.

Appellant is an auto technician. He testified that he had formerly lived in Baltimore City and his gross income was $37,491 in 1993, approximately $30,000 to $35,000 in 1992, $34,681 in 1991, and $35,260 in 1990. In August 1993, appellant moved to Garrett County because his second wife wanted to return to her childhood home. Appellant acknowledged that he knew that the economy in Garrett County was not as strong as the economy in Baltimore. When he moved, appellant first went to work in Bedford, Pennsylvania, for $12.00 per hour. He anticipated working enough hours to earn approximately $25,000 a year. Because of the limited work available, however, appellant's actual earnings approximated $18,720 a year, with considerable expenses connected with his commuting 160 miles per day to and from work. For that reason, he left that job and secured employment as an automobile mechanic at Lakeview Exxon in Garrett County, where he was earning, at the time of the hearing, approximately $16,120 a year. Appellant testified that he stopped paying child support for a short period of time because he was behind in paying his household bills. Appellant also testified that he had filed for bankruptcy. Appellant's second wife is an attorney, but she is currently staying home to care for their two children, and she intends to do so until their younger child is two years old. (At the time of the hearing, the younger child was six months old).

Appellee testified that she earned approximately $11,000 a year in 1992 and 1993. After the divorce, appellee returned to her occupation as a baker and earned $8.25 per hour. At the time of the hearing, appellee could no longer pursue her occupation as a baker because of back problems, but was going to school to become a court reporter. When asked whether she had remarried, appellee replied, "No." Subsequent to the hearing, appellant obtained from the Circuit Court for Montgomery County a copy of a certificate of marriage for appellee and Kevin John Dorsey dated 1 December 1990.

In her report and recommendation, the special master found:

From the time of the parties' divorce until August 1993, the Defendant was steadily employed as an automobile technician in Baltimore. Based upon his tax returns, he earned between $34,000.00 and $37,491.00 each and every year and was able to pay his child support. The Defendant was not laid off or fired from his job. He suffered no injury rendering him unable to work in his chosen field. He very clearly testified that he quit his job because his wife wanted to move the family to Garrett County. The Defendant knew that he could not earn the same salary in Garrett County that he earned in Baltimore. He knew that his wife did not intend to work and he would have no contribution from her toward the family's expenses in Garrett County. He knew that he had a pre-existing obligation to provide support to the three (3) children of his first marriage. As the Defendant has voluntarily impoverished himself, he cannot use this reduced income to justify a corresponding reduction in child support. Like the Defendant in *Goldberger v. Goldberger*, [96 Md.App. 313] 624 A.2d 1328 (1993), this Defendant knowingly and voluntarily elected a lifestyle that would make it difficult, if not impossible, to meet his support obligation.

The master then attributed to appellant an income of $3,124 per month or $37,488 per year, the amount earned by appellant in 1993. Although the master found appellee's decision to

return to school to be reasonable, she stated that appellee's "decision not to work at all should not be used to [appellant's] economic detriment when calculating the Guidelines," and imputed to appellee an income of $1,430 per month or $17,160 per year, which would be her income as a baker earning $8.25 per hour and working a forty-hour week. Because the oldest child would be emancipated in January 1995, appellant's child support obligation for two children under the child support obligations would be $669 per month. Considering appellant's obligation to support the two minor children of his second marriage, the master recommended that appellant's child support obligation be reduced to $500 per month.

### Voluntary Impoverishment

Appellant contends that the trial court erred in finding that he voluntarily impoverished himself and thereby computing his support obligations under the support guidelines on the basis of an imputed income of $37,488 per year instead of his actual income of $16,120 per year.

█ Under a proper petition, a court may modify a child support obligation at any time if a material change in circumstances has been shown that justifies such a modification. Md. Code (1984, 1991 Repl.Vol.), § 12–202(b) of the Family Law Article (hereinafter FL); *Chalkley v. Chalkley*, 240 Md. 743, 744, 215 A.2d 807 (1966); *Kovacs v. Kovacs*, 98 Md.App. 289, 312, 633 A.2d 425 (1993), *cert. denied*, 334 Md. 211, 638 A.2d 753 (1994); *Reese v. Huebschman*, 50 Md.App. 709, 711–12, 440 A.2d 1109 *cert. denied*, 293 Md. 547 (1982); *Tidler v. Tidler*, 50 Md.App. 1, 9, 435 A.2d 489 (1981). A decision regarding such a modification is left to the sound discretion of the trial court and will not be disturbed unless that discretion was arbitrarily used or the judgment was clearly wrong. *Reese*, 50 Md.App. at 712, 440 A.2d 1109; *Tidler*, 50 Md.App. at 9, 435 A.2d 489.

█ It is well established in Maryland that parents have an obligation to support their minor children. *Garay v. Overholtzer*, 332 Md. 339, 368–69, 631 A.2d 429 (1993); *Middleton v.*

*Middleton,* 329 Md. 627, 631, 620 A.2d 1363 (1993); *Carroll County v. Edelmann,* 320 Md. 150, 170, 577 A.2d 14 (1990); *Knill v. Knill,* 306 Md. 527, 531, 510 A.2d 546 (1986); *Bledsoe v. Bledsoe,* 294 Md. 183, 193, 448 A.2d 353 (1982); *Goldberger v. Goldberger,* 96 Md.App. 313, 323–24, 624 A.2d 1328 (1993). Indeed, the Maryland Legislature has made it a crime for parents to fail to support their minor children. FL § 10–203.

■ The child support guidelines set forth in FL § 12–201 *et seq.* establish the amount of child support required of each parent, based on each parent's actual income, or potential income if the parent is voluntarily impoverished. In *Goldberger,* we held that

> for the purposes of the child support guidelines, a parent shall be considered "voluntarily impoverished" whenever the parent has made the free and conscious choice, not compelled by factors beyond his or her control, to render himself or herself without adequate resource.

*Goldberger,* 96 Md.App. at 327, 624 A.2d 1328. Further, we held that "[w]hether the voluntary impoverishment is for the purpose of avoiding child support or because the parent simply has chosen a frugal lifestyle for another reason, doesn't affect that parent's obligation to the child." *Id.* at 326, 624 A.2d 1328.

■ To determine if a parent has been voluntarily impoverished, a court must consider ten factors:

1. his or her current physical condition;
2. his or her respective level of education;
3. the timing of any change in employment or financial circumstances relative to the divorce proceedings;
4. the relationship of the parties prior to the divorce proceedings;
5. his or her efforts to find and retain employment;
6. his or her efforts to secure retraining if that is needed;
7. whether he or she has ever withheld support;
8. his or her past work history;

9. the area in which the parties live and the status of the job market there; and

10. any other considerations presented by either party. *Id.* at 327, 624 A.2d 1328 (quoting *John O. v. Jane O.,* 90 Md.App. 406, 422, 601 A.2d 149 (1992)). In the case *sub judice,* the court made only a cursory analysis of these factors. Having reviewed the record and considered the factors, it appears to us that appellant is in good physical condition and has a high school education. Appellant's change in employment, and thus the change in his financial situation, occurred almost three years after the parties' divorce. Appellant has been steadily employed, although the compensation he has received for his efforts has decreased steadily as a result of his move with his second family to an area with a less affluent economy. Appellant continues to be employed as an auto technician, and he has expressed no need for retraining because of lack of opportunities in Garrett County. Wages in Garrett County are simply less than the wages available for similar employment in Baltimore. Appellant has withheld child support payments because of his inability to meet both his household expenses and his child support obligation. Our review of the evidence persuades us that the trial court's finding that appellant was voluntarily impoverished was erroneous.

We have no doubt that appellant's income would have been greater than it now is if he had not moved from Baltimore to a less affluent area. We do not believe, however, that a court can restrict a parent's choice of residence in order to insure that he or she remains in or moves to the highest wage earning area. While a parent must take into consideration his or her child support obligation when making job and location choices, such considerations should not be immobilizing. In the case *sub judice,* appellant's second wife always intended to return to her original home in Garrett County when she completed her education. It certainly does not appear that appellant was attempting to shirk his child support obligations, only that he was attempting to move to a more rural environment and to abide by his second wife's

wishes. Indeed, the fact that when appellant first moved to Garrett County he took a job eighty miles from his home, commuting 160 miles each day to work as many hours as possible at the kind of job he was trained to do, hardly indicates an intention to impoverish himself or to choose a lifestyle of ease or indolence.

■ Appellant's move resulted in a significant decrease in his wages, which constitutes a material change in circumstances, entitling appellant to a modification of his child support obligation in accordance with his current income. Indeed, even if appellant had intentionally impoverished himself, his current obligations must be computed in accordance with a realistic assessment of his current earning capacity. *Goldberger*, 96 Md.App. at 327–28, 624 A.2d 1328. In the absence of any evidence to indicate that appellant's old job in Baltimore or one comparable to it in wages paid would be available to him if he moved back to Baltimore, it is preposterous to deem that he now has a potential income of $37,000 per year, especially while living in Garrett County.

### Potential Income of Appellant's Second Wife

Appellant argues that the trial court erred by considering the potential income of appellant's second wife in calculating appellant's child support obligation.

■ FL § 12–201(b) defines income in terms of the "actual income of a parent," not the parent's new spouse. The statute does not provide for imputation of a new spouse's income to a parent upon remarriage. *See Knill*, 306 Md. at 531, ("The duty of a child's support extends to the natural parents of an illegitimate child, but not to a stepparent."); *Commonwealth ex rel. Hagerty v. Eyster*, 286 Pa.Super. 562, 429 A.2d 665, 669 (1981) ("[I]f the parent from whom support is sought remarries, the property interest and income of the new spouse may not be considered in determining the parent's economic status, except to the extent of the new spouse's voluntary contributions to the child's support.") (citations omitted).

■ In her Report and Recommendation, the master made the following statements regarding income from appellant's second wife:

> The Defendant asserts that he is the sole source of income for the two (2) children of his current marriage. As his wife does not work outside the home, he is responsible for 100% of the household expenses. The Defendant would have his support obligation to the three (3) children of his first marriage reduced so as to meet 100% of his current family's needs. That is not reasonable. The Defendant's wife is a licensed attorney in the State of Maryland. Her earning potential most likely exceeds that of the Defendant. She has chosen to remain at home with her children rather than seek employment. It is unreasonable to expect the children of the Defendant's first marriage to pay for this choice.

From the master's subsequent calculations, however, it does not appear that she imputed income from appellant's wife to appellant. In fact, because appellant supports the two minor children of his second family, the master, pursuant to FL 12–202(a)(2)(iii)2, which authorizes a departure from the guidelines under those circumstances, recommended a reduction in appellant's child support obligation to $500, an amount below the guidelines requirement as she calculated it on the basis of imputed earnings. Therefore, we do not find that the trial court imputed any income from appellant's wife to appellant in calculating appellant's child support obligation. In determining whether strict application of the guidelines would be unjust or inappropriate because there are other children in appellant's household that he is duty bound to support and, if so, how much of a departure would be appropriate, the court may properly consider the obligation of someone else to contribute to the support of those other children.

### Appellee's Testimony

Appellant argues that the trial court improperly denied his motion for rehearing based on appellee's allegedly perjured testimony. We disagree.

Appellant raised the issue of appellee's allegedly perjured testimony regarding her marital status at the hearing on his exceptions to the master's Report and Recommendation. At that time, the court found that appellee's inconsistencies did "not materially affect any of the matters pending before the court." We agree with that conclusion; appellee's marital status does not affect appellant's obligation to pay child support for his children.

JUDGMENT VACATED AND CASE REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.