744 A.2d 70

**Deidre ALLRED**

v.

**Jeffrey ALLRED.**

**No. 5741, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 13, 2000.

**14**

Joseph B. Spillman, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Gerald F. Gay (Arnold & Gay, P.A., on the brief), Baltimore, for appellee.

Argued before BYRNES, MARVIN H. SMITH (Retired, specially assigned) and ROBERT F. FISCHER (Retired, specially assigned), JJ.

ROBERT F. FISCHER, Judge (Retired, specially assigned).

The Circuit Court for Cecil County ordered appellee Jeffrey Allred to pay his estranged wife, appellant Deidre Allred, $116.39 a month in child support for the couple's two minor

children. In her appeal, Mrs. Allred challenges the amount of the award.

## ISSUE

Mrs. Allred argues, in essence, that the trial court erred in attempting to determine the appropriate amount of the award under Maryland child support guidelines,[1] by imputing to her as income the amount that her live-in boyfriend contributes toward household expenses.

## FACTS

Mrs. Allred filed for a divorce from Mr. Allred in December of 1997. In April of 1998, before the divorce was granted, Mrs. Allred filed a complaint for child support. The complaint, filed through the Cecil County Bureau of Child Support Enforcement, sought support retroactively to December of 1997. The Allreds had apparently agreed to share physical custody of their sons evenly, with the children spending alternate weeks with each parent.

A hearing on the complaint for support was held in September of 1998. Mrs. Allred was the only witness at the hearing. She testified on direct examination that her sole source of income is her job at a bank. There was no dispute that Mrs. Allred earns $1,213.33 a month from her job, and Mr. Allred earns $5,873.67 a month. The parties further agreed that Mr. Allred pays $130.26 a month for health insurance for the children, which must be subtracted from his total income for purposes of determining the amount of child support. Mrs. Allred argued that, based on these figures, the child support guidelines require that Mr. Allred pay $177.00 a week in child support.[2]

---

1. *See* Maryland Code (1989, 1999 Repl.Vol.), §§ 12–201–12–204 of the Family Law Article. All statutory citations herein are to the current guidelines as set forth in the Family Law Article.

2. *See* § 12–204(e) of the Family Law Article.

Mr. Allred countered that Mrs. Allred receives additional income, by way of her boyfriend's contributions to household expenses, which reduces the appropriate amount of the award. Upon cross-examination by defense counsel, Mrs. Allred revealed that she shares a rented apartment with her boyfriend, Tim Thompson; Thompson's minor son; and, on alternate weeks, her own two sons. Both her name and Thompson's name are on the lease to the apartment. Mrs. Allred explained that she and Thompson split the bills for rent, electricity, cable, telephone service, and trash removal, although Thompson sometimes pays more.[3] She listed the following monthly bills: $750 for rent; about $120 for electricity; about $35 for cable; and about $100 for telephone service. At defense counsel's request, the court took judicial notice of the fact that "most garbage collectors charge $60 a quarter or $15 a month."

Mr. Allred contended that the amount of money that Thompson contributed to pay the bills should be imputed to Mrs. Allred as income for purposes of determining the appropriate amount of child support under the guidelines. The court agreed, and stated:

> She has indicated on the stand, although they may not pay equal proportions of the bills that become due every month, I am of the mind right now, unless it's proven to me in concrete, fifty-fifty on electric, cable. That's the only rational way to go about it. One month he may pay 75, she may pay 25. I don't want to get into that. Right now fifty-fifty.

Based on the court's position, Mr. Allred calculated that $510.00—half the approximate total amount of the bills—should be imputed to Mrs. Allred's income. The court then determined that the child support payments under the guidelines should be calculated using $1,723.33 as Mrs. Allred's monthly income. At the court's instruction, the Cecil County

---

**3.** Although Mrs. Allred testified that the her name alone is on the electric bill, no evidence was presented as to whose name or names are on the other bills.

Bureau of Child Support Enforcement performed the calculation, which set the amount of weekly child support payments at $116.39 rather than $177.00. The court signed an order to that effect.

## DISCUSSION

■ The Legislature enacted the child support guidelines to ensure that awards of child support are "based on specific descriptive and numeric criteria...." *Voishan v. Palma,* 327 Md. 318, 322, 609 A.2d 319 (1992). The guidelines are premised on the concept that "a child should receive the same proportion of parental income, and thereby enjoy the same standard of living, he or she would have experienced had the child's parents remained together." *Id.*

■ Section 12–202(a)(1) of the Family Law Article directs that, "in any proceeding to establish ... child support, ... the court shall use the child support guidelines set forth in this subtitle." Under § 12–202(a)(2)(i), "[t]here is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines set forth in this subtitle is the correct amount of child support to be awarded." In order to rebut the presumption, the party opposing the application of the guidelines must present "evidence that the application of the guidelines would be unjust or inappropriate in a particular case." § 12–202(a)(2)(ii). If the court agrees that the guidelines should not be applied, it "shall make a written finding or specific finding on the record stating the reasons for departing from the guidelines." § 12–202(a)(2)(iv)1. *See, e.g., Krikstan v. Krikstan,* 90 Md.App. 462, 473–74, 601 A.2d 1127 (1992) (reversing a trial court's decision to reduce child support award to a figure below that provided in guidelines, and remanding case for further proceedings, where trial court failed to explain reason for deviation from guidelines). As the language of the provisions makes clear, "[i]t is mandatory that the statutory guidelines be used. No deviation from the cookbook methodology may

be made." John F. Fader II and Richard J. Gilbert, MARY-LAND FAMILY LAW § 8–3 (2d ed.1995).

The schedule of basic child support obligations set forth in § 12–204(e) of the Family Law Article is based on the combined adjusted actual income of both parents. *See* § 12–201(e) (defining combined adjusted actual income as "the combined monthly adjusted actual income of both parents"). "Actual income" is defined as "income from any source," including, *inter alia*, rent, salaries, wages, and gifts. § 12–201(c)(1)–(4). "Adjusted actual income" subtracts from actual income (1) pre-existing child support obligations that are actually paid, (2) alimony or maintenance obligations that are actually paid, and (3) the actual cost of health insurance coverage that is provided to the child or children when the parents are jointly or severally responsible for providing such coverage. § 12–201(d).

Mrs. Allred argues that Thompson's contributions to the household expenses are not actual income to her and, therefore, cannot properly be used to compute the combined adjusted actual income on which the custody payments are based. Indeed, the payments in question are not included in the lists of examples of actual income set forth in § 12–201(c)(2), (3), and (4). While Thompson pays rent, which is actual income under § 12–201(c)(2), he pays it to a landlord and not to Mrs. Allred. Thompson's name, like Mrs. Allred's, is on the apartment lease. Mrs. Allred does not sublet to him. There is no suggestion that Thompson assists in paying the bills in exchange for work that Mrs. Allred performs, such that the payments might be considered salary or wages. Nor is there any indication that the payments are gifts to Mrs. Allred.

Mr. Allred asserts that it is "appropriate to consider as 'actual income' to a parent the providing of rent free lodging and other living expenses by a third party." In doing so, Mr. Allred relies heavily, as he relied below, on *Petrini v. Petrini*, 336 Md. 453, 648 A.2d 1016 (1994). In *Petrini*, the mother of a non-custodial father who was required to pay child support provided the father with rent-free housing and regularly paid

his medical and health insurance bills. The trial court imputed the values of the housing and payments to the father as income for the purpose of determining the appropriate amount of his child support payments, and the Court of Appeals affirmed. The Court explained that the housing and payments were gifts under § 12–201(c)(4), in that they were " 'voluntary transfer[s] of property to another made gratuitously or without consideration.' " *Id.* at 463, 648 A.2d 1016. It added that the gifts had "the effect of freeing up other income that may not have otherwise been available [to the father] to pay a child support award." *Id.* at 464, 648 A.2d 1016.

The payments made by Thompson cannot properly be considered to be gifts to Mrs. Allred. Unlike in *Petrini,* the payments are not gratuitous. Thompson and his son make use of the apartment, electricity, cable, phone, and trash removal service. Thus, Thompson's payments are for his use and that of his son. While Mrs. Allred testified that she "would be in bad shape" without Thompson's payments, her testimony indicated only that she needed a roommate in order to afford adequate housing for herself and her children. It did not indicate that Thompson assisted in any way with the day-to-day support of the children by contributing funds for food, clothing, or other expenses. The situation is simply not analogous to that in *Petrini,* where gifts to the non-custodial father meant that the father did not have to expend funds for his own housing and medical needs and therefore could use more of his actual income to satisfy the needs of his children.

While the lists of examples set forth in § 12–201(c)(2), (3), and (4) are not exclusive, there is an additional reason to conclude that Thompson's payments are not actual income to Mrs. Allred. Thompson's contributions to the household expenses are the equivalent of contributions that might be made by a new spouse. In *Moore v. Tseronis,* 106 Md.App. 275, 284–85, 664 A.2d 427 (1995), a father argued that his actual income was reduced after he was ordered to make child support payments that were calculated under the guidelines. He requested that the payments be reduced accordingly. As

a further basis for a reduction, the father pointed out that he now had two children by his second wife to support. When the court refused to reduce the payments as much as the father requested, he appealed to this Court. The father argued, *inter alia*, that the trial court had erred by imputing to him the potential income of his second wife. This Court rejected the argument, pointing out that the record did not support the assertion that the trial court had considered the potential income of the second wife. We added that the definition of actual income "does not provide for imputation of a new spouse's income to a parent upon remarriage." *Id.* at 284, 664 A.2d 427. Nevertheless, we explained, "in determining whether strict application of the guidelines would be unjust or inappropriate because there are other children in appellant's [new] household that he is duty bound to support and, if so, how much of a departure would be appropriate, the court may properly consider the obligation of someone else [ (the second wife) ] to contribute to the support of those other children." *Id.* at 285, 664 A.2d 427.

In *Moore*, we cited *Pennsylvania ex rel. Hagerty v. Eyster*, 286 Pa.Super. 562, 429 A.2d 665, 669 (1981) for the proposition that, "if the parent from whom support is sought remarries, the property interest and income of the new spouse may not be considered in determining the parent's economic status...." *Hagerty* in turn cited*Commonwealth ex rel. Travitzky v. Travitzky*, 230 Pa.Super. 435, 326 A.2d 883, 885 (1974), in which the Superior Court of Pennsylvania explained that, although a new spouse's assets may not be considered as part of the parent's financial resources, they may be considered in determining the parent's ability to pay child support. *See generally* 27C C.J.S. § 677 at 305 (1986) ("[A]lthough a cohabitant of a divorced parent is under no obligation to support the parent's child of a dissolved marriage, divorce courts have, in child support determinations, considered the financial benefits which accrued to divorced parents from cohabitants"). As Judge Fader and Master Gilbert observe in the FAMILY LAW MANUAL, our comments in *Moore* reflect that

the income of another spouse [or a cohabitant] is not applicable in calculating the guideline amount. However, from that point on, any consideration, including other money that may be available to a natural [parent] to run a household, may be a factor in determining whether the presumption of correctness may be overcome and a departure made from the guideline amount.

FAMILY LAW MANUAL § 8.4(*l*) at 58–59 (1998 Cum.Supp.).

■ We hold therefore that the trial court erred by imputing as gift income to Mrs. Allred the amount that Thompson paid toward the bills for rent, electricity, cable, telephone service, and trash removal. The payments were not actual income within the meaning of § 12–201(c) and should not have been considered in calculating the basic child support obligation under § 12–204(e).[4]

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPELLEE TO PAY THE COSTS.**

Dissenting Opinion by MARVIN H. SMITH, Judge (Retired, specially assigned).

MARVIN H. SMITH, Judge (Retired, specially assigned), dissenting.

I respectfully dissent.

---

**4.** We are not suggesting that in the proper case, a court could not impute as gift income to a parent the parent's roommate's payment of a portion of rent and expenses. If, for example, the payments exceeded the roommate's fair share of the rent, they may confer a benefit of the excess on the parent. Also, we are not suggesting that the court could not consider a parent's roommate's payment of a portion of rent and expenses in determining, under § 12–202(a)(2)(iii), whether application of the guidelines would be unjust or inappropriate. Of course, any such determination would be required to be made by "a written finding or specific finding on the record stating the reasons for departing from the guidelines" and would be required to state, *inter alia,* "how the finding serves the best interests of the child." § 12–202(a)(2)(iv)(2).

In *Petrini v. Petrini*, 336 Md. 453, 462, 648 A.2d 1016 (1994), Chief Judge Murphy said for the Court: "The types of 'gifts' that may be includable as part of a parent's actual income in a particular case is within the court's discretion, and should only be reversed if it acted arbitrarily in exercising its discretion or if the judgment on the matter was clearly wrong." These people were eating out of the same pot. The Court's opinion, in my judgment, ignores the fact that Mrs. Allred was relieved of a part of her obligations. In *Petrini*, the Court went on to say, "if a parent is relieved of some of these expenses through outside contributions, it may be appropriate under certain circumstances to increase the parent's actual income to account for such contributions." *Id.* at 464, 648 A.2d 1016.

I do not believe the learned trial judge who sat in this case below abused his discretion or acted arbitrarily in exercising his discretion. I likewise do not believe he was clearly wrong. Thus, I would affirm.