*Jesse Francis v. Stephanie Francis*, No. 1637, Sept. Term 2023. Opinion by Tang, J.

**CHILD SUPPORT – FACTORS CONSIDERED – FACTORS RELATING TO CUSTODIANS AND OBLIGORS – DISABILITY BENEFITS**

Father's veteran's disability benefits fell within the statutory definition of "actual income" for purposes of calculating child support. "Actual income" includes income from "any source," and the statutory exclusion does not encompass such benefits. Md. Code Ann., Fam. Law ("FL") §§ 12-201(b)(1), (3), (5), 12-204 (2019).

Circuit Court for Baltimore County
Case No. 03-C-17-003189

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1637

September Term, 2023

_____

JESSE FRANCIS

v.

STEPHANIE FRANCIS

_____

Berger,
Leahy,
Tang,

JJ.

_____

Opinion by Tang, J.

_____

Filed: September 25, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from a dispute between Jesse Francis ("Father") and Stephanie Francis ("Mother") involving Father's child support obligation. After a hearing, the Circuit Court for Baltimore County modified the amount of child support owed by Father and found him in contempt for failing to pay child support. On appeal, Father asks us to consider the following questions, which we quote:

I.     Whether the circuit court abused its discretion in denying the Motion to Exclude a Portion of Veteran Disability Benefits from Consideration in Child Support Guidelines[.]

II.    Whether the Circuit Court abused its discretion in its child support calculation[.]

III.   Whether the Circuit Court abused its discretion by finding [Father] in contempt for failing to pay child support[.]

For the reasons below, we affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Our analysis of the claimed errors does not require a detailed recitation of the factual and procedural history of the case. The parties divorced on July 16, 2021, and they have one minor child together. By agreement of the parties, the judgment of absolute divorce awarded them joint legal and shared physical custody of the child, with Father to pay child support in the amount of $957 per month, commencing on December 1, 2020.

### Motions to Modify Custody and Child Support

On April 4, 2022, Father filed a motion to modify custody and child support. He claimed a material change in circumstances due to his medical retirement from the U.S. Army, allowing him to care for the child without needing childcare. Father asked the court to grant him primary physical custody of the child and to reduce his child support obligation

according to the child support guidelines,[1] citing his decreased income and his belief that Mother was now earning significantly more than when the judgment of absolute divorce was entered.

On January 24, 2023, Father, through new counsel, filed another motion to modify child support, stating that his income had significantly decreased, impacting his ability to pay child support. In a supplemental motion filed on February 6, 2023, he claimed that Mother voluntarily impoverished herself by not seeking employment despite receiving training as a dental assistant, which he had financed. Father sought to impute income to her if she remained unemployed at the time of the hearing on the motion. He also moved to exclude his veteran's disability benefits as income in the child support guidelines calculation.

On March 9, 2023, Mother filed her own motion to modify custody and child support based on a material change in circumstances that affected the child's best interest. She claimed that since the entry of the judgment of absolute divorce, Father had not exercised his parenting time with the child, had not communicated with Mother about matters involving the child, had been arrested and had peace orders entered against him, and continued in his failure to pay child support. Mother asked that the court award her

---

[1] There is no dispute that this is a child support guidelines case; the parties' combined adjusted income was less than $30,000 per month. *See* Md. Code Ann., Fam. Law ("FL") § 12-204(a)(1) (2019) ("The basic child support obligation shall be determined in accordance with the schedule of basic child support obligations in subsection (e) of this section.").

sole legal and physical custody of the child, along with an adjustment of Father's child support obligation according to the child support guidelines.

## Mother's Petition for Contempt

On October 20, 2021, the circuit court found that Father was $10,777.81 in arrears in unpaid child support and ordered him to pay $50 per month toward the arrearage beginning December 1, 2021. Father, however, did not pay child support as ordered.

On October 10, 2022, Mother filed a petition for contempt, claiming that Father's arrearage had increased to approximately $17,456. Father responded that he had not willfully disregarded a court order but that the significant decrease in his income had affected his ability to pay child support. In a supplemental response, Father stated that because his motion to modify child support was pending, a decision on the petition for contempt would not be "ripe" until the court ruled on his request to modify child support.

## Hearing

On September 20, 2023, the circuit court heard arguments on all the outstanding motions.[2] At the outset of the hearing, Father stated that he was not contesting Mother's request for sole physical and legal custody of the child.[3]

---

[2] The court also heard argument on Mother's motion for sanctions arising from a discovery dispute. At the conclusion of the hearing, the court granted the motion and ordered Father to pay Mother $1,500. That decision is not the subject of this appeal.

[3] Father still sought an access schedule with the child. At the conclusion of the hearing, the court ordered that prior to any resumption of parenting time/access by Father, the parents and the child must participate in reunification therapy. The decision regarding custody and access is not the subject of this appeal. Accordingly, it is unnecessary to summarize the evidence related to this issue.

3

Father testified that he had retired from the Army on April 6, 2022. He stated that despite trying to find work, he had not been employed since then due to a traumatic brain injury he suffered in a car accident in 2019 and the resulting PTSD. He claimed to be medically disabled, although he believed himself physically capable of being a delivery driver, a job he recently applied for. Father explained, however, that a recent criminal matter had hindered his employment search.

Father introduced into evidence a letter from the Department of Veterans Affairs, certifying that he receives service-connected disability compensation of $3,985.96 per month, effective April 1, 2023. This represents a decrease from his active-duty salary of $6,000 per month. In addition, he receives approximately $165 per month for combat-related, service-connected injuries.

Father acknowledged that he unilaterally reduced his court-ordered child support payments to Mother from $957 (plus the $50 arrearage) to approximately $400 for several months, $200 for one month, $150 for one month, and $0 for several other months. Father testified that he owned two cars, one of which required an $850 monthly payment that he paid on time each month; he dined out at many restaurants; and he paid $200 per month for a storage unit. He also admitted to having a gym membership that he did not use, the dues for which he could use to pay his child support arrears if he canceled the membership. Additionally, he testified that he has another child for whom he is financially responsible.

Mother testified that she was not working at the time of the divorce and had not worked since then. She denied any inability to work, acknowledging that she is a certified dental assistant. However, she chose not to seek employment because she "just love[s]

being a mom." Mother investigated the cost of childcare if she were to work and estimated it to be about $370 per month for before and after-school care. Additionally, she testified that she receives $539 monthly in Supplemental Nutrition Assistance Program (SNAP) benefits for food. She also claimed that the arrearage in Father's child support payments amounted to $24,890.81 as of September 20, 2023.

## Court's Ruling

At the conclusion of the hearing, Father argued that his veteran's disability benefits should not be included as income when calculating child support. He asked the court to impute a monthly minimum wage income to both parties, as neither was employed. Additionally, he asked that any modification of child support be retroactive to April 4, 2022, when he first filed his motion to modify child support. As for the contempt petition, Father argued that he could not pay the ordered child support because his income had decreased, he had financial responsibilities to another child, and he was facing difficulties finding employment, given his circumstances.

In its oral ruling, the court determined Father's monthly income to be $4,149. This sum comprised his veteran's disability benefits of $3,986 and the additional payment from the Army of $163. The court found that this was a decrease from his previous active-duty income of $6,000 per month and a material change of circumstances that justified a modification of child support.

As for Mother's employment, the court found she could work as a dental assistant but opted to be a stay-at-home parent. Therefore, the court imputed to her a monthly minimum-wage income of $2,227 ($12.85 per hour × 40 hours per week × 52 weeks per

year / 12 months).[4] The court deducted $370 from the imputed income to account for childcare expenses that would be necessary if Mother were employed. Based on these calculations, the court found, according to the child support guidelines, that Father should pay Mother $926 per month.

The court declined to make the modified child support obligation retroactive to the date Father filed his motion to modify child support in April 2022. The court explained that no documentary evidence proved that Father's reduced income began then. The court also did not "think it was equitable" to make the modified child support retroactive to April 2022, given that Father "wasn't paying anything during much of this period of time on child support to make that retroactive that far back." Nonetheless, the court did make the change in child support retroactive to April 1, 2023, the effective date of Father's veteran's disability benefits, as certified by the Department of Veterans Affairs.

As for Mother's petition for contempt, the court found the evidence uncontradicted that Father had not paid court-ordered child support. The court stated that Father had the burden of establishing his defense of inability to pay child support, which he failed to do. It explained that although Father's income changed in April 2023, he made significant discretionary payments, such as an $850-per-month car payment and a gym membership. As a result, the court held Father in contempt for failing to pay $24,745.81 (using Mother's

---

[4] The court did not include any portion of the SNAP benefits in the guidelines calculation because if she were fully employed, she would be disqualified from receiving those benefits.

calculation but accounting for the court's retroactive reduction in child support) and established a purge provision of a $100-per-month payment toward the arrearage.

In its written order entered September 29, 2023, the circuit court: (1) granted Father's April 4, 2022 motion to modify custody and child support, modifying his child support obligation to $926 per month; (2) granted Mother's October 10, 2022 petition for contempt, ordering Father to pay $100 per month towards the arrearage; (3) denied Father's January 24, 2023 motion to modify child support and custody as moot; (4) denied Father's motion to exclude a portion of his veteran's disability benefits from child support; (5) denied Father's February 6, 2023 supplemental motion to modify child support; and (6) granted Mother's March 9, 2023 motion to modify custody and child support, awarding her sole legal and primary physical custody of the child.

Father timely noted an appeal of the circuit court's decision on October 20, 2023.

## DISCUSSION

### I.

### Veterans' Disability Benefits as Income

Father argues that the circuit court abused its discretion when it declined to exclude his veteran's disability benefits in calculating his updated child support obligation. He contends that those benefits should have been excluded as income because they are intended for the service member who earned them. Alternatively, Father claims that if the benefits may be used in calculating a child support obligation, the court should have considered only a portion of his benefits as income so he, as the intended beneficiary, would also benefit from the payments.

7

The calculation of basic child support is governed by FL § 12-204, which requires the obligation to "be divided between the parents in proportion to their adjusted actual incomes." FL § 12-204(a)(1).

FL § 12-201(b) defines "actual income" in pertinent part, as follows:

(1) "Actual income" means income *from any source*.

\* \* \*

(3) *"Actual income" includes*: (i) salaries; (ii) wages; (iii) commissions; (iv) bonuses; (v) dividend income; (vi) pension income; (vii) interest income; (viii) trust income; (ix) annuity income; (x) Social Security benefits; (xi) workers' compensation benefits; (xii) unemployment insurance benefits; (xiii) disability insurance benefits; (xiv) for the obligor, any third party payment paid to or for a minor child as a result of the obligor's disability, retirement, or other compensable claim; (xv) alimony or maintenance received; and (xvi) expense reimbursements or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business to the extent the reimbursements or payments reduce the parent's personal living expenses.

(4) Based on the circumstances of the case, the court may consider the following items as actual income: (i) severance pay; (ii) capital gains; (iii) gifts; or (iv) prizes.

(5) *"Actual income" does not include* benefits received from means-tested public assistance programs, including temporary cash assistance, Supplemental Security Income, food stamps, and transitional emergency, medical, and housing assistance.

(emphasis added).

The central question here is whether veterans' disability benefits fall under the statutory definition of "actual income" for the purpose of calculating child support. Because the question involves the application of FL § 12-201(b), we review the court's

8

decision *de novo*. *See Knott v. Knott*, 146 Md. App. 232, 246 (2002). As there are no reported Maryland cases on point, we look to cases from other jurisdictions.

Of note, "[v]eterans who became disabled as a result of military service are eligible for disability benefits." *Mansell v. Mansell*, 490 U.S. 581, 583 (1989). "The amount of disability benefits a veteran is eligible to receive is calculated according to the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired." *Id.*

As pertinent to the issue Father raises here, in *Rose v. Rose*, 481 U.S. 619 (1987), the United States Supreme Court considered a state court's authority to hold a parent in contempt for failing to pay child support when his only means of satisfying his obligation was his veteran's disability benefits. *Id.* at 621–22. The veteran parent conceded that the state court "may *consider* disability benefits as part of the veteran's income in setting the amount of child support to be paid." *Id.* at 626. But he claimed that the state court's power "to *enforce* its support order extends solely to income not derived from veterans' disability benefits." *Id.*

The veteran relied on former 38 U.S.C. § 3101(a) (now 38 U.S.C. § 5301(a)(1)), which provides that payment of veterans' disability benefits is not liable to attachment, levy, or seizure under any legal or equitable process. *Id.* at 630. The Supreme Court rejected the argument, observing that the benefits "compensate for impaired earning capacity . . . and are intended to 'provide reasonable and adequate compensation for disabled veterans *and their families*.'" *Id.* (citations omitted). "Congress clearly intended veterans' disability benefits to be used, in part, *for the support of veterans' dependents*." *Id.* at 631 (emphasis

9

added) (footnote omitted). The Supreme Court recognized that under the state statute, the trial court properly considered the veteran's needs and the needs of his children when determining his child support obligation. *Id.* at 636. It concluded that Title 38 did not unequivocally indicate that the benefits are exclusively provided for that veteran's support. *Id.* Thus, the Supreme Court affirmed the trial court's order, explaining that the congressional intent behind the federal statute was not offended when the trial court enforced its child support order by holding the veteran in contempt. *Id.*

"Notably, several courts have read *Rose* as explicitly authorizing the treatment of veteran's disability benefits as income for purposes of calculating a veteran-parent's support obligation." *In re M.E.R-L.*, 490 P.3d 1010, 1015 (Colo. App. 2020). *See also Matter of Braunstein*, 236 A.3d 870, 873 (N.H. 2020) (observing that *Rose* "addressed expressly whether veterans' disability benefits could be considered by state courts as 'income' for purposes of calculating [child] support" (quoting *Alwan v. Alwan*, 830 S.E.2d 45, 49 (Va. 2019))); *Goldman v. Goldman*, 197 So.3d 487, 493 (Ala. Civ. App. 2015) (explaining that *Rose* "held that federal law did not prevent a trial court from considering veteran's disability benefits as a financial resource in setting the amount of a child-support obligation").

Against this backdrop, we have no difficulty concluding that veterans' disability benefits are considered income for purposes of calculating child support and fall within the statutory definition of "actual income" under FL § 12-201(b). Although such benefits are not listed specifically under subsection (b)(3), the list of examples of actual income under this subsection is not exclusive. *See Allred v. Allred*, 130 Md. App. 13, 19 (2000) (noting

10

that the list of examples under § 12-201(c)(3), the predecessor to the current subsection (b)(3), is not an exclusive list). Veterans' disability benefits are "income from any source" under subsection (b)(1) and not excluded under subsection (b)(5).

Courts in jurisdictions with similarly-worded child support statutes have also concluded that veterans' disability benefits are income for purposes of calculating child support obligations. *See, e.g.*, *In re M.E.R-L.*, 490 P.3d at 1014 (father's veteran's disability benefits fell within the statutory definition of "gross income" for purposes of calculating child support; statutory exclusion did not include father's benefits as income; "gross income" included income from "any source"); *Goldman*, 197 So.3d at 493–94 (where state statute defined "gross income" as "income from any source[,]" veterans' disability benefits were considered income for purposes of calculating child support obligation; "[I]t would seem that the exclusion of [veteran parent's] disability benefits from his income for purposes of calculating child support would contradict the 'congressional intent of the entire veterans' disability benefits program.'" (citation omitted)); *Dye v. White*, 976 P.2d 1086, 1087–88 (Okla. Civ. App. 1999) (where state statute defined "gross income" to include "income from any source[,]" veteran's disability benefit properly included as income for purposes of calculating child support obligation); *Belue v. Belue*, 828 S.W.2d 855, 857 (Ark. App. 1992) (chancellor did not err in including veteran's disability benefits as income where language in state decisional law permitted consideration of "other income . . . from whatever source"). Thus, the circuit court did not err in including Father's veteran's disability benefits as "actual income" in calculating his child support obligation

11

under the guidelines.[5] Nor did the court err in declining his alternative request to consider only part of the benefits as income. *See Lemley v. Lemley*, 102 Md. App. 266, 291 (1994) (the trial court has no discretion to adjust the actual income of a parent except as expressly provided by the statute).[6]

## II.

## Child Support Calculation

Father argues that the circuit court abused its discretion in calculating child support and raises three main points. First, he claims that the court increased his monthly child support obligation from $957 to $1,026 per month ($926 in modified child support + $100 toward the arrearage), despite his decreased income. Second, he disputes the court's decision to credit Mother for childcare expenses that she may never incur. Finally, he

---

[5] Father cites *Mansell v. Mansell*, 490 U.S. 581 (1989), and *Howell v. Howell*, 581 U.S. 214 (2017), for the proposition that veterans' disability benefits are not considered marital property in a divorce because they are for the service member who earned the benefit. In his view, it should follow that such benefits also should not be calculated as income when determining a parent's child support obligation. Father's reliance on these cases is misplaced. First, as explained above, the benefit is to be used, in part, for the support of the veteran's dependents. Second, neither case addresses whether a state may treat veterans' disability benefits as income for calculating a child support obligation. *See In re M.E.R-L.*, 490 P.3d at 1016 (observing that *Howell* discusses only the treatment of disability benefits as community property; "Nothing in *Howell* . . . addresses whether a state — through statute or judicial decision — may treat disability benefits as income for calculating a child support obligation."); *Goldman*, 197 So.3d at 493 (observing that the *Mansell* Court was not asked to determine whether disability benefits were properly considered as income in child support calculations).

[6] Father did not cite to a statutory provision, nor are we aware of any, that would give the circuit court discretion to adjust the actual income earned from his veteran's disability benefits.

12

contends that the court failed to consider his financial responsibility to his other child when determining his child support obligation.

Other than citing *Petitto v. Petitto*, 147 Md. App. 280 (2002), for the general and uncontroverted proposition that a court has the discretion to modify child support if there is a material change in circumstances, Father cites no legal authority to guide or frame our analysis of his contentions. *See* Md. Rule 8-504(a)(6) (a brief shall contain "[a]rgument in support of the party's position on each issue"). Nor does he develop his arguments about each. *See Oak Crest Vill., Inc. v. Murphy*, 379 Md. 229, 241 (2004) ("An appellant is required to articulate and adequately argue all issues the appellant desires the appellate court to consider in the appellant's initial brief.").

Where a party cites no relevant law on an issue in their brief, we have refused to "rummage in a dark cellar for coal that isn't there[,]" or to "fashion coherent legal theories to support appellant's sweeping claims." *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md. App. 476, 494 (2002). As this Court has stated, "[w]e cannot be expected to delve through the record to unearth factual support favorable to appellant and then seek out law to sustain his position." *von Lusch v. State*, 31 Md. App. 271, 282 (1976) (quoting *Van Meter v. State*, 30 Md. App. 406, 408 (1976)). Because Father's contentions are not adequately briefed, we decline to address them. *See HNS Dev., LLC v. People's Couns. for Baltimore Cnty.*, 425 Md. 436, 458–60 (2012) (declining to consider an argument where party cited no controlling law to support its "sweeping accusations and conclusory statements" and thus did not comply with Rule 8-504, requiring that a brief contain "argument in support of the party's position on each issue," and explaining that "[a] necessary part of any argument

13

[is] case, statutory, and/or constitutional authorities to support it"). Without presenting developed arguments supported by legal authority, we cannot say that the court abused its discretion in calculating child support.[7]

## III.

## Constructive Civil Contempt

Finally, Father asserts two grounds on which he avers that the circuit court abused its discretion in finding him in contempt for failing to pay child support to Mother. First, he maintains that his failure to pay resulted from his decreased income following his medical retirement from the Army. Second, he claims that the court was required to consider his inability to pay the purge amount, but it failed to do so.

Generally, we "will not disturb a contempt order absent an abuse of discretion or a clearly erroneous finding of fact upon which the contempt was imposed." *Kowalczyk v. Bresler*, 231 Md. App. 203, 209 (2016).

"In a case of civil contempt, the intended purpose of the proceeding is remedial, intending to benefit the recipient of the funds by compelling the payor to comply with the existing court order." *Rivera v. Zysk*, 136 Md. App. 607, 611 (2001). In the context of an alleged failure to pay child support, Maryland Rule 15-207(e)(2) permits a court to make a finding of contempt "if the petitioner proves by clear and convincing evidence that the

---

[7] In a previous unreported opinion, we similarly declined to address an issue raised by Father because his argument was not adequately briefed with supporting legal authority. *See Francis v. Francis*, No. 1420, Sept. Term 2021, 2022 WL 3226782, at *5 (Md. App. Aug. 10, 2022). Our previous opinion made it clear that the rules of appellate procedure must be observed.

alleged contemnor has not paid the amount owed, accounting from the effective date of the support order through the date of the contempt hearing." *Arrington v. Dep't of Hum. Res.*, 402 Md. 79, 97 (2007).

"Subsection (e)(3) of the Rule provides two defenses to such a finding[.]" *Id*. It states:

> The court may not make a finding of contempt if the alleged contemnor proves by a preponderance of the evidence that (A) from the date of the support order through the date of the contempt hearing the alleged contemnor (i) never had the ability to pay more than the amount actually paid and (ii) made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make payment, or (B) enforcement by contempt is barred by limitations[.]

Md. Rule 15-207(e)(3).[8]

If the defendant fails to establish either defense and the court finds the defendant in contempt, the court must then address the question of a sanction. *Id.* at 101. Subsection (e)(4) of the Rule provides "a roadmap for how the contempt finding may be implemented." *Id.* at 97. It provides that,

> [u]pon a finding of constructive civil contempt for failure to pay spousal or child support, the court shall issue a written order that specifies (A) the amount of the arrearage for which enforcement by contempt is not barred by limitations, (B) any sanction imposed for the contempt, and (C) how the contempt may be purged.

Md. Rule 15-207(e)(4). The subsection further provides that "[i]f the contemnor does not have the present ability to purge the contempt, the order may include directions that the contemnor make specified payments on the arrearage at future times and perform specified

---

[8] Father did not raise the defense of limitations under subsection (e)(3)(B).

15

acts to enable the contemnor to comply with the direction to make payments." *Id.* When a court anticipates incarcerating the defendant as a sanction for the defendant's failure to purge the contempt, the court must first confirm the defendant's present ability to pay and set the purge at an amount that "the defendant can immediately meet in order to avoid the incarceration." *Arrington*, 402 Md. at 103.

Father does not dispute that he failed to pay the total amount of ordered child support during the relevant period. Thus, the burden shifted to him, under subsection (e)(3)(A), to prove by a preponderance of the evidence that from the date of the support order through the date of the contempt hearing, he never had the ability to pay more than the amount actually paid and made reasonable efforts to become or remain employed or otherwise lawfully to obtain the funds necessary to make payment.

We agree with the circuit court that Father did not meet his burden of proving his defense under subsection (e)(3)(A). Although he produced evidence that his monthly income had decreased after his retirement, Father failed to prove that he could not pay more than he actually paid. He admitted to owning two cars, one of which required an $850 monthly payment that he paid on time each month. He also acknowledged that he dined out frequently and paid about $200 monthly for a storage unit. He maintained a gym membership that he did not use, and if he canceled it, he agreed he could have used that money to pay some of his arrears. He also failed to prove that he made reasonable efforts to become employed. Despite struggling to find employment after his Army retirement due to his alleged brain injury and a criminal matter, he believed he was physically capable of

16

working and testified to only one unsuccessful job application. The court did not abuse its discretion in finding that Father was in contempt of the child support order.

Father argues that the court erred in finding him in contempt without first determining that he was presently able to pay the purge amount. In *Arrington*, the Maryland Supreme Court expressly clarified that "[p]resent inability to comply with the support order or to meet a purge established by the court is *not* a defense and does *not* preclude a finding of contempt under subsection (e)(2)." 402 Md. at 97. "If the petitioner proves that the defendant failed to pay the amount owed and the defendant fails to prove either that he or she could not have paid more than was paid or that limitations has run on the part that could have been paid, the court may find the defendant in contempt." *Id.*

Furthermore, subsection (e)(4) contemplates that a court may issue a contempt order even "[i]f the contemnor does not have the present ability to purge the contempt[.]" Md. Rule 15-207(e)(4). It allows the court to craft a contempt order with "directions that the contemnor make specified payments on the arrearage at future times and perform specified acts to enable the contemnor to comply with the direction to make payments." *Id.* That is what the court did; it exercised its discretion in fashioning a contempt order directing Father to pay specified payments on the arrearage of $100 per month.[9] The court

---

[9] Father notes that "neither the state of Maryland nor the federal government incarcerate persons for being indigent or based on the inability to pay a debt." His point seems to be based on cases addressing a court's authority to incarcerate a contemnor despite the contemnor's inability to pay. *See, e.g.*, *Arrington*, 402 Md. at 103. But the contempt order here did not include a sanction of incarceration that required the court to first confirm Father's present ability to purge the contempt.

apparently recognized that Father could pay $100 monthly in addition to the modified child support obligation. On this record, we perceive no abuse of discretion by the court.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**