708 A.2d 1225

RICHARD S. ELKIN, PLAINTIFF/APPELLANT,
v. ROSEANNE SABO, F/K/A ROSEANNE
ELKIN, DEFENDANT/RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 24, 1998—Decided April 29, 1998.

464

Before Judges PRESSLER, CONLEY and WALLACE.

*Malcolm Blum,* argued the cause for appellant.

*Megan A. Ward,* argued the cause for respondent (*Kelly, Gaus & Holub,* attorneys; *Ms. Ward,* on the brief).

The opinion of the court was delivered by

WALLACE, Jr., J.A.D.

In the first appeal of this matter, we concluded that the child support plaintiff was ordered to pay in the judgment of divorce left him impoverished. In an unpublished opinion, we remanded for the trial judge to reconsider the child support issue, giving "due consideration to the parties' respective assets and other resources." On remand, the trial judge reduced plaintiff's child support obligations, but increased his share of unreimbursed health related expenses and added the requirement that plaintiff pay 70% of defendant's work related child care expenses. Further, the judge added an additional financial element because of plaintiff's alleged non-traditional visitation and concluded that plaintiff's Employee Stock Option Plan (ESOP) distribution received after the judgment of divorce was subject to equitable distribution. In addition, the judge denied plaintiff's application to have defendant replace funds she used that belonged to the children and denied all counsel fees.

On appeal, plaintiff challenges: (1) the trial judge's findings of fact and the amount of the child support ordered; (2) the equitable distribution of his ESOP; (3) the failure to require defendant to replace the children's money; and (4) the failure to award him

counsel fees. We affirm in part, reverse in part, and remand for reconsideration.

## I

Plaintiff makes several arguments in his contention that the trial judge made erroneous findings on the issue of child support. First, he claims the judge erred in failing to include the contributions of defendant's boyfriend as a factor. At the hearing on remand, defendant testified that she borrowed $9,000 over an eighteen month period from her boyfriend to pay for legal fees and that he contributed an average of $30 per week to cover any expenses resulting from his living in the house. In addition, she testified that her boyfriend made non-financial contributions such as repairs to the home.

In reaching his decision on child support, the trial judge determined that plaintiff's net income was $697 per week and that defendant's net weekly income from her two part-time jobs ($272) and her dividends and interest ($26) totaled $298 per week. Thus, the judge did not include any monies defendant received from her boyfriend as part of her income in finding a joint net weekly income of $995. The judge applied the Child Support Guidelines (the Guidelines) for two children, which indicated a support range between $298–$329 per week. The judge chose a figure of $314 as the total support amount. Because plaintiff's net income was 70% of the combined available income, he ordered plaintiff to pay $220 per week in child support.

Plaintiff contends that the $30 per week defendant receives from her boyfriend plus another $116.30, representing the $9,000 loan over an eighteen month period, should have been included in defendant's income. Plaintiff urges that including these amounts would result in total net weekly income for defendant of $444 which would have reduced his percentage of the total income to 61%. Thus, plaintiff claims his weekly support payment should be $202, and not $220.

Our Supreme Court has adopted specific Guidelines to assist judges in determining a parent's child support obligation. *R.* 5:6A. These Guidelines apply to the initial determination of child support and to motions for modification. *Italiano v. Rudkin, (Italiano), 294 N.J.Super.* 502, 506, 683 *A.*2d 854 (App.Div.1996); *Zazzo v. Zazzo,* 245 *N.J.Super.* 124, 129, 584 *A.*2d 281 (App.Div. 1990), *certif. denied,* 126 *N.J.* 321, 598 *A.*2d 881 (1991). The critical premise upon which the Guidelines are predicated is that the children will benefit from the living standards of both parents who each have a shared obligation to support their children. The Guidelines seek to implement this principle by determining the total amount of the child support obligation and then dividing this sum proportionately between the parents.

The Guidelines give examples of the types of income that are included in gross income. *See Pressler, Current N.J. Court Rules,* Appendix IX–B, "Use of the Child Support Guidelines" (1998). Simply put, gross income is "all earned and unearned income that is recurring or will increase the income available to the recipient over an extended period of time." *Ibid.*

It is clear that under the Guidelines, the weekly rent defendant receives from her live-in boyfriend could have been included as part of her gross income. The judge found, however, that defendant was not receiving a significant financial benefit from her boyfriend and that he was not utilizing monies or resources that would otherwise be utilized to meet the needs of the children. Further, the judge found that defendant's boyfriend made non-financial contributions to the household from which defendant financially benefitted and that the $9,000 loan would probably not be repaid. In determining that defendant's boyfriend's contribution should not be included, the judge essentially concluded that the benefits received by defendant were offset by a like amount of increased expenses, resulting from the boyfriend's presence in the home.

If we were deciding this issue in the first instance, we might well reach a different conclusion. However, we may "not disturb

the factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by and inconsistent with the competent relevant and reasonably credible evidence as to offend the interests of justice." *Pascale v. Pascale,* 113 *N.J.* 20, 33, 549 *A.*2d 782 (1988)(quoting *Rova Farms Resort, Inc. v. Investors Ins. Co.,* 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974)). There was sufficient credible evidence for the trial judge to conclude that the boyfriend's contributions should not be included in calculating defendant's income and we are bound by that finding.

We note also that while the trial judge did not include the loan from defendant's boyfriend as income, he also did not include the monies plaintiff borrowed from his father and his aunt as gross income to the plaintiff. Thus, the judge did not factor in the loans that either party incurred in trying to meet their financial obligations from the separation and divorce. We find no abuse in the treatment of the various loans.

■ Second, plaintiff contends that the trial judge erroneously added $35 per week to his child support obligation because of his visitation schedule. After setting the level of plaintiff's support obligation, the trial judge assessed an additional $35 per week against him, finding that his visitation routine with his children was "non-traditional."

The trial judge relied upon *Pascale v. Pascale,* 140 *N.J.* 583, 660 *A.*2d 485 (1995), in awarding the additional $35 per week. In *Pascale,* our Supreme Court addressed the concerns of a divorced father, who argued that his "parenting time" with his children constituted a "nontraditional" custody arrangement. *Pascale, supra,* 140 *N.J.* at 600, 660 *A.*2d 485. The father sought a finding that the couple's custody arrangement was "nontraditional" and therefore, his child support obligation should be reduced. *Id.* at 595, 660 *A.*2d 485. In rejecting his claim, the Supreme Court held that "visitation in excess of one day per week for the non-custodial parent does not constitute a nontraditional custody arrangement." *Id.* at 601, 660 *A.*2d 485. The Court noted that having the

children one day each weekend, rather than alternate weekends, resulted in the same amount of time for the father over the course of a year as the "prototypical secondary caretaker." *Id.* at 600, 660 *A.*2d 485. Contrary to *Pascale,* the issue here is whether less visitation should be considered non-traditional for purposes of modifying the support obligation.

In our view, it was an abuse of discretion to increase plaintiff's support obligations for failure to exercise more visitation. There was no visitation order. Thus, plaintiff's visitation schedule was not in violation of any court order. Further, plaintiff lived in a one room apartment which made it extremely difficult to exercise overnight visitation with his two children.

Beyond that, we find no support for the judge's increase under the Guidelines. There are numerous assumptions included in the Guidelines. One of these assumptions addresses visitation and shared parenting. The Guidelines explain:

> The awards in the support schedules represent spending on children by intact families. In an intact family, the children reside in one household and no visitation is needed. This is similar to child support actions in which one parent has sole physical custody of a child and there is no visitation or shared-parenting. *The awards in the Appendix IX–F support schedules represent situations in which the child is with the custodial parent 100% of the time.* Although the Appendix IX–F awards are not reduced for visitation or shared-parenting time, they may be adjusted, if these factors are present in a specific case, through worksheet calculations. For further information and assumptions related to visitation and shared-parenting adjustments and their related assumptions, see paragraphs 13 and 14 respectively.
>
> [Pressler, *Current N.J. Court Rules,* Appendix IX–A, 7(f), "Considerations in the Use of Child Support Guidelines" (1998) ](emphasis added).

As we understand the Guidelines, adjustments for visitation time should be reserved for situations where visitation is above the norm. The Guidelines provide that "visitation is a level of parental participation in child-rearing that *is less* than the substantial equivalent of two or more overnights with the child each week." Appendix IX–A, 13(a) "Considerations in the Use of Child Support Guidelines." Further, the Guidelines recognize that in certain situations the court "may reduce a support order to accommodate variable expenses such as food and transportation incurred by the

non-custodial parent." *Ibid.* In addition, where the support award has been reduced for visitation time and the non-custodial parent does not conform with the visitation schedule included in a parenting plan or court order, then the court should consider adjusting the support ordered. *Ibid.*

In other words, the support numbers in the Guidelines are premised upon the child being with the custodial parent 100% of the time. Plaintiff has less than two overnights a week. His visitation has already been factored into the support Guidelines. Consequently, it was error for the trial judge to assess an additional amount for "non-traditional" visitation against the plaintiff.

■ Third, plaintiff contends that the trial judge erred in creating new and unwarranted financial burdens. Specifically, plaintiff contends it was error to increase his share of the children's unreimbursed medical expenses from 50% to 70% and to create a new obligation for him to pay 70% of defendant's work related child care expenses.

Unfortunately, the trial judge gave no reasons for the imposition of these increased obligations. In his letter opinion, after setting forth the level of plaintiff's child support obligation from the Guidelines, the judge without any findings stated, plaintiff "is to be responsible for 70% of unreimbursed medical, dental or health related expenses for the children together with 70% of work related child care expenses."

■ "A trial judge has a duty to make findings of fact and conclusions of law" on each issue addressed. *See Italiano, supra,* 294 *N.J.Super.* at 505, 683 *A.*2d 854. The articulation of reasons is essential to the fair resolution of the case. Here, the trial judge made no findings of fact on these issues. However, in denying plaintiff's motion for reconsideration, the trial judge stated:

> Plaintiff overlooks the fact that, pursuant to the Child Support Guidelines, the obligation for unreimbursed medical expenses is a part of child support, and modification of one often requires modification of the other. When the court modified the original Judgment of Divorce, which did not use the Guidelines, it was necessary to revisit the entire support award, which included an award for unreimbursed medical expenses, in light of the guidelines. Plaintiff's application for reconsideration is therefore denied.

Although the judge gave reasons for his consideration of the unreimbursed medical expenses, he failed to give reasons for the increase from 50% to 70%. Further, there were no findings of fact with regard to child care expenses.

More importantly, we find no discussion or consideration of defendant's assets. A more detailed analysis of defendant's assets might well result in a conclusion that plaintiff should not pay the percentages allocated for unreimbursed medical and child care expenses. Our review of the record reveals that defendant testified that she owned the following: the marital home in Franklin, New Jersey with an equity of approximately $100,000; stocks and bonds in a Dean Witter account in the amount $17,600; certificates of deposit at Columbia Savings Bank in the amount of $40,000; certificates of deposit at Collective Savings Bank in the amount of $34,000; an IRA at Fidelity Investments in the amount of $2,000; an IRA at Sussex County State Bank in the amount of $53,000; bank account at Sussex County State Bank totalling $19,890; a bank account at Collective Savings Bank totalling $1,738; and three automobiles worth approximately $1,000. On the other hand, plaintiff had received $37,000 as his share of the equity in the marital home which he used to purchase a Volvo; two IRA accounts in the amount of $4,200; his ESOP in the amount of $7,000; and a savings account in the amount of $300.

In our remand in the first appeal we directed that the trial court reconsider the support question with regard to the parties assets and other resources. Despite this direction, we find no discussion by the trial judge that he carefully considered defendant's assets and the impact those assets had on the support ordered. As noted above, a fresh look at defendant's assets might well result in a lesser percentage of the unreimbursed medical expenses and child care obligation that plaintiff should pay.

## II

We turn now to plaintiff's contention that it was error to consider his ESOP as property subject to equitable distribution.

*N.J.S.A.* 2A:34–23 permits equitable distribution of property acquired by both spouses or either spouse "during the marriage." The marriage is considered ended by the "filing of a valid divorce complaint that culminates in divorce." *Zappala v. Zappala,* 222 *N.J.Super.* 169, 172, 536 *A.*2d 308 (App.Div.1988) (citing *Portner v. Portner,* 93 *N.J.* 215, 219, 460 *A.*2d 115 (1983)). In *Pascale, supra,* the Court held that "stock options awarded after the marriage has terminated but obtained as a result of efforts expended during the marriage should be subject to equitable distribution." *Pascale, supra,* 140 *N.J.* at 610, 660 *A.*2d 485.

We are convinced that the record was inadequate to determine whether plaintiff's ESOP was subject to equitable distribution. During the remand hearing, when asked about certain deposits into his account plaintiff testified for the first time that he had received an ESOP of approximately $6,000. However, there was no indication whether plaintiff's ESOP was for his employment prior to or after the filing of the divorce complaint. The judge should have permitted the parties to conduct discovery concerning this asset, or at a minimum, permitted plaintiff to present evidence at a later date that his ESOP was not subject to equitable distribution. To be sure, plaintiff has the burden of proof to establish that this asset is not subject to equitable distribution.

Plaintiff sought to overcome this deficiency by filing a motion for reconsideration. He submitted a certification in which he stated that he received the ESOP after the divorce complaint was filed in January 1993. He certified that in January 1994, Rite Industries, Inc. acquired his employer International Dyestuff Corp. and established the ESOP at that time. In January 1995, Rite Industries was sold to a new owner which created a 401K plan and plaintiff was forced to cash in his ESOP program.

Further, he certified that the gross amount of the ESOP distribution was $5,416.48 and that he paid an early distribution penalty and taxes totaling $1,625.29. Thus, plaintiff claimed the net amount that he received from the ESOP was only $3,791.19.

It was plaintiff's contention that his ESOP was not subject to equitable distribution. Even if it were subject to equitable distribution, however, defendant's share of plaintiff's ESOP should have been based on a value of approximately $3,790 and not $6,000.

The judge rejected plaintiff's evidence, stating:

> At the remand hearing, plaintiff testified that he had received, shortly after the divorce, approximately $6,000 from an Employee Stock Option Plan that would have been subject to equitable distribution. This ESOP was not listed on any of plaintiff's prejudgment CIS's, nor was it mentioned in Judge Parker's original opinion. Since the court must now balance the parties relative financial positions, it is equitable and fair to credit Ms. Sabo with half of the plaintiff's ESOP monies as an offset against any overpayment and refund. Plaintiff was less than crystal clear with respect to the exact amount of his ESOP, or how much, if any, of the ESOP was accumulated postjudgment. However, since plaintiff presumably has all available information regarding his ESOP, any ambiguities should be resolved in favor of the defendant.

The record does not clearly establish one way or the other whether plaintiff's ESOP was a deferred compensation plan that was subject to equitable distribution. The Statement of Account provided by Rite Industries states:

> Each participant will be 100% vested in their account value provided that the Internal Revenue Service approves Plan termination. *Vesting percentages will vary between individual participants based on years of service if Plan termination does not occur for any reason.*

(Emphasis added).

Plaintiff's ESOP did not exist during the marriage and did not come into existence until a year after plaintiff filed his divorce complaint. Unlike *Pascale, supra,* it is unclear whether plaintiff's ESOP was obtained as a result of efforts expended during the marriage. Although the Statement of Account declares that "vesting percentages will vary between individual participants based on years of service," this may or may not be a prospective policy on the part of Rite Industries. In any event, on this record, there is insufficient evidence to award defendant an equitable portion of the ESOP and a remand is required for each party to submit evidence on this issue.

## III

Next, plaintiff argues that "the defendant ought be compelled to reconstitute the money that she took from the parties' children." At the trial, defendant admitted that she had used $19,800 of the children's savings bonds to buy plaintiff's interest in the marital home. These bonds were a gift to the children from plaintiff's aunt to be used for college expenses. The trial judge found:

> However, Plaintiff's solution may not be in the best interests of the children at this time, as it would involve taking present resources away from the children in exchange for a future benefit. Defendant correctly points out that the children, especially Suzanne, benefit from the stability of remaining in the marital home. There is nothing to suggest that the money from these bonds is in danger of being dissipated by virtue of its being converted to home equity. Judge Parker determined at trial that the fair market value of the home is $124,500. Defendant's most recent Case Information Statement (CIS) lists a mortgage on the premises of $25,000. Thus, there is substantial equity in the marital home over and beyond the money taken from the children's bonds.
>
> In addition, as the custodial parent, the Defendant is given the final authority to make decisions regarding the welfare of the children, and there is nothing to suggest that the decision to cash in the bonds and place the funds in the partial (sic) home is not in the best interests of the children at this time. Finally, Plaintiff was aware of the existence of the bonds at the time of the divorce, and did not ask that any special safeguards be put in place to keep those assets for the children. However, it is equitable and fair to the children to provide some safeguards to prevent future dissipation of the money from these bonds. Therefore, Defendant shall inform Plaintiff before placing any encumbrances or selling the marital residence, or before taking any action that might threaten the equity in the home, and further will notify Plaintiff if any judgments or liens are entered against her. In addition, the use of these bonds is noted for the record should it ever become necessary to enter an order with regard to college expenses in this matter.

We find no abuse of discretion in the trial judge's treatment of this issue. The judge imposed reasonable restraints on defendant's encumbering or selling the marital residence to protect the interests of the children.

## IV

Lastly, plaintiff contends that he should have been awarded counsel fees against the defendant. The trial judge "has broad discretion as to when, whether, and under what circum-

stances" attorney's fees may be awarded. *Enright v. Lubow*, 215 *N.J.Super.* 306, 313–14, 521 *A.*2d 1300 (App.Div.), *certif. denied*, 108 *N.J.* 193, 528 *A.*2d 19 (1987). In awarding counsel fees, the court should consider: the applicant's need, the spouse's financial ability to pay, and the applicant's good faith in instituting or defending the action. *Williams v. Williams*, 59 *N.J.* 229, 233, 281 *A.*2d 273 (1971). *See also Chestone v. Chestone*, 285 *N.J.Super.* 453, 466, 667 *A.*2d 371 (App.Div.1995); *Kozak v. Kozak*, 280 *N.J.Super.* 272, 278–79, 655 *A.*2d 95 (App.Div.1994) (holding that award of counsel fees is appropriate if the court finds the proceedings to have been frivolous and instituted for the purpose of harassment as well as abuse of the judicial system).

Here, both parties moved for attorney's fees. The judge properly considered the financial situation of both parties and concluded that an award of attorney fees was not appropriate. We find no abuse of discretion and affirm the denial of attorney's fees.

# V

We affirm the trial judge's findings with regard to the income of the parties and the range of child support based upon that income, which expressly excluded defendant's boyfriend's contribution and the various loans to the parties. We also affirm the treatment of the savings bond issue and the denial of counsel fees. We reverse the remaining issues and remand for further proceedings consistent with this opinion.