ALBERT A. WORKMAN, JR., APPELLEE, V.
DEBRA D. WORKMAN, APPELLANT.
632 N.W.2d 286

Filed August 10, 2001. No. S-99-710.

Jon A. Sedlacek for appellant.

Joseph A. Jordano and Carla Heathershaw Risko, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

### PROCEDURAL BACKGROUND

Debra D. Workman and Albert A. Workman, Jr., were divorced in 1992. Albert was ordered to pay child support in the amount of $250 per month for the support of the parties' minor child. On January 21, 1998, Debra filed a petition to modify the decree, alleging that a material change in circumstances had occurred and seeking to have Albert's child support obligation increased.

It has not been contested, in the district court or on appeal, that there has been a material change in circumstances since the entry of the decree that justifies modification of the child support award. The issue at the hearing on Debra's petition, held on April 20, 1999, was the calculation of the parties' gross and net incomes, and specifically whether to include Albert's retirement plan contributions or the money given to Debra by her cohabitant to pay household expenses.

In a written order filed May 19, 1999, the district court determined that Albert's retirement plan contributions were mandatory contributions within the meaning of the Nebraska Child Support

Guidelines (Guidelines). The district court further appears to have concluded that the $400 monthly contribution of Debra's cohabitant should be included in her income for purposes of calculating child support. The district court increased Albert's child support obligation to $300.04 per month, to commence on June 1.

## FACTUAL BACKGROUND

### ALBERT'S INCOME AND RETIREMENT PLAN

Albert is self-employed as an independent insurance agent, contracting through, among others, Farm Bureau Insurance Company of Nebraska and Farm Bureau Insurance Company of Iowa (collectively Farm Bureau). Albert sells insurance and receives commissions from different companies, including Farm Bureau. Albert started his business in 1993.

Farm Bureau established a "matching program" in 1996. The matching program provided that if Farm Bureau agents established a qualified retirement plan and committed up to 7 percent of their commissions to the plan, Farm Bureau would match the agents' contributions. There would be no matching funds from Farm Bureau unless the agent established a plan. Roland Schobert, vice president of marketing for Farm Bureau Insurance Company of Nebraska, testified that no yearly retirement plan contribution is required by Farm Bureau from its agents. Schobert explained that the matching program required a "qualified retirement vehicle."

Albert, as an employer, established a plan in 1996 for himself and his employees; specifically, a "money purchase pension plan" offered through Farm Bureau. The Farm Bureau matching program did not require the particular use of a money purchase pension plan, and Albert testified that his decision to establish the plan was voluntary.

The plan requires, as relevant, annual contributions in the amount of 14 percent of Albert's commissions from the sale of property casualty and new life insurance policies. Once such a plan is established, the participant employer has no discretion as to the amount of money that must be contributed to the plan. The employer's contributions are required for continued participation in the plan. The plan, as established by Albert, requires 2 years of service, at 1,000 hours per year, for employees to be eligible

to participate in the plan. At the time of the hearing, none of Albert's employees, other than himself, had qualified to participate in the plan.

Daniel Wintz, executive vice president and head of retirement plans for the SilverStone Group, defined a money purchase pension plan as a defined contribution plan where the annual contribution requirement of the employer is set forth in the document. Albert testified that Social Security taxes are paid on contributions to the plan, but no income taxes are paid on contributions until money is withdrawn from the plan. Wintz explained that the employer's contribution is required for the plan to be a qualified pension plan under the Internal Revenue Code and that a failure to make the required employer's contribution would jeopardize the tax-qualified status of the plan.

In 1998, $6,552 was contributed to Albert's retirement plan, one-half of which was Albert's contribution and one-half of which was Farm Bureau's matching contribution. In calculating his proposed child support obligation, using figures for 1998, Albert began with the net profit from his business, subtracted self-employment taxes, subtracted both his contribution and Farm Bureau's matching contribution to the retirement plan, and reached an annual income of $23,724, resulting in a gross monthly income for child support purposes of $1,977. The district court accepted this figure for purposes of calculating child support.

### DEBRA'S INCOME AND COHABITANT CONTRIBUTIONS

Debra was, at the time of hearing, working as a registered nurse at a local hospital. Debra was earning an hourly wage of $22.66 and was working 16 to 18 hours per week. Debra's income for 1998 was $47,013. Debra testified that she was diagnosed with renal disease in November 1998. Debra explained that her work hours had decreased due to the effects of the renal disease and that she was receiving dialysis treatment and was on a transplant list.

Debra testified that at the time of hearing, she was living with her daughter from her marriage to Albert, and her "significant other," whom we will refer to as her "cohabitant." Debra testified that her cohabitant paid $400 per month of household

expenses. Debra explained that the $400 per month was not rent, but simply an amount that her cohabitant had agreed to give Debra to help pay expenses. Albert testified that at the time of hearing, he was married, and that his wife contributed to household expenses.

Debra's proposed child support calculation, taking into account the income reduction resulting from her renal disease, proposed a gross monthly income for Debra of $1,525. The district court apparently used this figure, but added $400 to account for the contributions of Debra's cohabitant.

## ASSIGNMENTS OF ERROR

Debra assigns that the district court erred (1) in finding Albert's contribution toward his retirement was mandatory and therefore not considered income for purposes of calculating child support and (2) in including, as income for purposes of calculating child support, the $400 per month Debra's cohabitant contributes to household expenses.

In addition, Albert argues that the district court "erred by not calculating [Debra's] contribution to child support based on her earning capacity as if she were fully employed." Brief for appellee at 14. However, Albert did not assign this as error, nor does Albert's brief set forth a cross-appeal pursuant to the rules of this court. A cross-appeal must be properly designated, pursuant to Neb. Ct. R. of Prac. 9D(4) (rev. 2000), if affirmative relief is to be obtained. *McDonald v. DeCamp Legal Servs.*, 260 Neb. 729, 619 N.W.2d 583 (2000); *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999). An appellee may not raise arguments independent of or not responsive to an appellant's assignments of error without cross-appealing because they will fall beyond the scope of the case as presented in the appellant's brief. *McDonald v. DeCamp Legal Servs., supra.* Because Albert has not perfected a cross-appeal from the district court's ruling, we do not consider Albert's allegation of error.

## STANDARD OF REVIEW

Modification of the amount of child support payments is entrusted to the discretion of the trial court, and although, on appeal, the issue is reviewed de novo on the record, the decision

of the trial court will be affirmed absent an abuse of discretion. *Hartman v. Hartman*, 261 Neb. 359, 622 N.W.2d 871 (2001); *Riggs v. Riggs*, 261 Neb. 344, 622 N.W.2d 861 (2001).

■ Interpretation of the Guidelines presents a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. See *Riggs v. Riggs, supra.*

## ANALYSIS

### RETIREMENT PLAN CONTRIBUTIONS

■ Paragraph E of the Guidelines, entitled "Deductions," provides in pertinent part: "The following deductions should be annualized to arrive at monthly net income: . . . . 4. Mandatory Retirement. Individual contributions, in a minimum amount required by the plan." The Guidelines do not, however, allow a deduction for contributions to voluntary retirement plans in arriving at net income for purposes of calculating child support. See *Lebrato v. Lebrato*, 3 Neb. App. 505, 529 N.W.2d 90 (1995).

The record reflects that the money purchase pension plan at issue in this case requires annual contributions. Mandatory retirement plan contributions are specifically defined by the Guidelines as "a minimum amount *required by the plan.*" (Emphasis supplied.) Guidelines, paragraph E(4). A trial court should examine the applicable retirement plan documents utilizing this simple objective standard to determine whether a participating parent's individual contributions thereto are mandatory or voluntary.

The contrary rule urged by Debra is inconsistent with the plain language of the Guidelines. Under Debra's rationale, the owner of a business who adopted a money purchase plan for legitimate business reasons could be found to make "voluntary contributions" to the plan for purposes of child support computation, while an employee of the business who was not involved in the selection of the plan would be making mandatory contributions to the same plan. There would be no logic or equity in this result.

■ For purposes of determining whether retirement plan contributions are deductible from gross monthly income for purposes of child support calculations, we hold that the proper inquiry is whether the contribution is required by the applicable retirement plan in effect at the time of the calculation, not

whether the parent could have selected another type of plan at some prior time. See *Marriage of Mull*, 61 Wash. App. 715, 812 P.2d 125 (1991) (payments made to voluntary pension plan may be deducted from income if plan becomes mandatory upon election). When we apply this inquiry to the plan at issue in the instant case, it is clear that the terms of the plan require annual contributions by Albert and that under the Guidelines, Albert is entitled to deduct from his income the minimum contribution required by the plan. See Guidelines, paragraph E(4).

■ We note, however, that the issue presented to us in this appeal is whether Albert's retirement plan contributions are "mandatory" within the meaning of paragraph E of the Guidelines. If, under the circumstances of a particular case, the deduction of individual contributions required by a retirement plan results in a child support obligation which is unjust or inappropriate, the trial court has discretionary authority to deviate from the Guidelines in determining a parent's obligation. See, Guidelines, paragraph C(5); *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999). Whether a parent has acted in bad faith, to evade child support obligations, may be relevant to such an inquiry. See, e.g., *Knippelmier v. Knippelmier*, 238 Neb. 428, 470 N.W.2d 798 (1991); *Dworak v. Fugit*, 1 Neb. App. 332, 495 N.W.2d 47 (1992). The district court did not address, and Debra did not assign as error, whether the district court should have deviated from the Guidelines in the instant case.

We, therefore, determine that the district court did not abuse its discretion insofar as it deducted Albert's minimum individual contribution required by the retirement plan. Debra's first assignment of error is, without merit.

### Cohabitant Contribution to Expenses

■ Debra argues that the district court erred by including in her net income the contributions of her cohabitant to household expenses. Generally, if the moving party, i.e., the party seeking to have a particular source of support included as income under the Guidelines, shows that the nonmoving party earns or can reasonably expect to earn a certain amount of income on a regular basis, a rebuttable presumption of including such income arises under the Guidelines. See *Noonan v. Noonan*, 261 Neb. 552, 624

N.W.2d 314 (2001). Thus, the question for this court is whether Albert met his burden of proving that the contributions of Debra's cohabitant were "income" within the meaning of the Guidelines.

■ This court has not set forth a rigid definition of what constitutes "income," but has instead relied on a flexible, fact-specific inquiry that recognizes the wide variety of circumstances that may be presented in child support cases. Other courts, in addressing the income of a subsequent spouse or cohabitant, have generally held that the income of the subsequent spouse or cohabitant will not be considered unless such income is directly used to reduce the expenses of the parent. See, generally, Laura W. Morgan, Child Support Guidelines: Interpretation and Application § 2.03[e][15] (Supp. 2000) (citing cases). The reasoning is that if the cohabitant's income is used to decrease the parent's expenses, then the parent's income is necessarily of greater value. *Id.*

Those courts have taken various approaches, however, when determining the appropriate procedure for analyzing cohabitant contributions to household expenses. Some courts have held that such contributions are to be included in the parent's income. *Cook v. Eggers*, 593 N.W.2d 781 (N.D. 1999). See *Fee v. Fee*, 344 Pa. Super. 276, 496 A.2d 793 (1985). See, also, *Elkin v. Sabo*, 310 N.J. Super. 462, 708 A.2d 1225 (1998) (stating that contributions for expenses may be included in gross income, but trial court did not abuse discretion in finding that benefits were offset by increased expenses resulting from cohabitant's presence in home). See, also, e.g., La. Rev. Stat. Ann. § 9:315(6)(c) (West 2000) (court may also include as income benefits party derives from expense sharing); Indiana Child Support Rules and Guidelines, guideline 3, commentary 2(d) (Lexis 2001) (regular and continuing payments made by roommate that reduce parent's costs may be basis for imputing income).

Other courts have concluded, however, that contributions made by a cohabitant are not to be considered income under the child support guidelines, but may form a basis for deviation from the guidelines under appropriate circumstances. See, *Allred v. Allred*, 130 Md. App. 13, 744 A.2d 70 (2000); *State ex rel. Horne v. Horne*, 127 N.C. App. 387, 489 S.E.2d 431 (1997); *Inscoe v. Inscoe*, 121 Ohio App. 3d 396, 700 N.E.2d 70 (1997); *Elliott v.*

*Elliott*, 920 S.W.2d 570 (Mo. App. 1996). See, also, *Haessly v. Haessly*, 203 A.D.2d 700, 611 N.Y.S.2d 928 (1994); *In re Marriage of Keopke*, 483 N.W.2d 612 (Iowa App. 1992) (rejecting contributions as income under guidelines without discussing deviation from guidelines). See, also, e.g., Conn. Agencies Regs. §§ 46b-215a-1(11)(B)(iv) and 46b-215a-3(b)(1)(D) (2001) (cohabitant contributions excluded from income but may form basis of deviation if parent has reduced income or experienced "extraordinary reduction" of living expenses).

Finally, some courts have stated that a reduction in expenses resulting from a cohabitant's contribution may be considered by the court in setting or modifying child support, but did not specify how the contributions were to be included in the calculations. See, *Jackson v. Jackson*, 111 Nev. 1551, 907 P.2d 990 (1995); *Harris v. Superior Court (Smets)*, 3 Cal. App. 4th 661, 4 Cal. Rptr. 2d 564 (1992); *Campanali v. Campanali*, 695 S.W.2d 193 (Tenn. App. 1985); *Silvia v. Silvia*, 9 Mass. App. 339, 400 N.E.2d 1330 (1980).

 We conclude that the better rule is that the reasonable contributions of a parent's cohabitant to household expenses should not be included in the parent's gross income for purposes of determining child support, but may be considered in determining whether the circumstances warrant a deviation from the Guidelines. To include such contributions in the parent's income, as did the district court, is both unfair and unwieldy.

In the first place, the inclusion of cohabitant contributions in a parent's income, while recognizing that such contributions may enhance a parent's disposable income, does not account for the fact that household expenses may be greater because of the cohabitant. The cohabitant's contributions to the payment of household expenses would be attributed as income to the parent, without reference to whether those expenses are greater due to the presence of the cohabitant, or to the economic choices made by the parent and cohabitant as a result of their cohabitation. This inequity is particularly pronounced where the custodial parent shares a residence with the cohabitant; in that situation, the child has already benefited from the improved living conditions provided by the combined resources of the parent and cohabitant, yet that benefit will be eroded because of the reduction in child

support that will be forthcoming—in essence, transferring the benefit of expense sharing from the child and custodial parent to the noncustodial parent.

It should also be remembered that expense-sharing arrangements are entered into voluntarily by parents. Parents may, consequently, choose to forgo those arrangements once they understand the impact of such arrangements on child support and perceive expense sharing as counterproductive. See Sue Nations, *Louisiana's Child Support Guidelines: A Preliminary Analysis*, 50 La. L. Rev. 1057 (1990). It seems rather imprudent that good faith attempts at reducing expenses should be discouraged rather than encouraged by the law. See *id.* Furthermore, the choice to reside with a cohabitant is not of unmitigated benefit to the parent. The reduced expenses to the parent are offset by the parent's surrender of an unfettered right to possession of the premises.

In short, while it may be appropriate to consider the parent's changed living conditions in determining child support obligations, this consideration requires a more inclusive inquiry than is permitted by simply counting a cohabitant's contributions as income. The court must consider, among other things, the living conditions of the parties and the minor child, whether the cohabitant resides with the custodial or noncustodial parent, the extent to which the presence of the cohabitant and the reasonable economic choices of the parties have increased household expenses, and whether it would be fair and equitable to all concerned to determine child support based, in part, on those factors. In other words, an appropriate inquiry into the effect of a cohabitant on child support requires that such an inquiry be conducted, not mathematically, but in the context of determining whether a deviation from the Guidelines is appropriate.

This is not to suggest, however, that income may not be imputed to a parent under the Guidelines where a cohabitant's contribution exceeds his or her fair share of household expenses or where a parent relies on the cohabitant's contributions for support instead of reaching his or her earning capacity. Income for the purpose of child support is not necessarily synonymous with taxable income. *Rhoades v. Rhoades*, 258 Neb. 721, 605 N.W.2d 454 (2000). It is well established that the provision of "in-kind" benefits, from an employer or other third party, may

be included in a party's income for child support purposes. See, *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998) (military housing benefit and subsistence allowance included as income); *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104 (1994) (free food and rent provided by employers, who were also petitioner's parents, included as income); *Morrill County v. Darsaklis*, 7 Neb. App. 489, 584 N.W.2d 36 (1998) (use of home on farm included as income); *Robbins v. Robbins*, 3 Neb. App. 953, 536 N.W.2d 77 (1995) (value of food and drink provided by employer included in income). See, also, *Unkelbach v. McNary*, 244 Conn. 350, 710 A.2d 717 (1998) (one-half of household expenses attributed to parent's income as gifts where cohabitant paid all household expenses without reimbursement). Compare *Muller v. Muller*, 3 Neb. App. 159, 524 N.W.2d 78 (1994) (earning capacity imputed to parent where parent chose to stay home with children and subsequent spouse paid all household expenses).

The Court of Special Appeals of Maryland set forth a cogent analysis of circumstances similar to the instant case in *Allred v. Allred*, 130 Md. App. 13, 744 A.2d 70 (2000). In that case, the court addressed whether the contributions of the mother's cohabitant were to be included in the mother's income for child support purposes. The court determined that they were not. Under Maryland law, "actual income" is defined as "income from any source." See *id.* The court noted that the mother did not sublet to the cohabitant and that his payments to her were not salary or wages. The court further noted that there was no indication that the payments were gifts to the mother, as they were not made gratuitously or without consideration. Instead, the cohabitant and his son made use of the apartment and its amenities, and the payments were for the cohabitant's use and that of his son. See *id.*

While the court concluded that the payments were not "actual income" within the meaning of Maryland law, the court also stated:

> We are not suggesting that in the proper case, a court could not impute as gift income to a parent the parent's roommate's payment of a portion of rent and expenses. If, for example, the payments exceeded the roommate's fair share of the rent, they may confer a benefit of the excess on

the parent. Also, we are not suggesting that the court could not consider a parent's roommate's payment of a portion of rent and expenses in determining . . . whether application of the guidelines would be unjust or inappropriate.

*Id.* at 21 n.4, 744 A.2d at 74 n.4.

For the reasons set forth above, we agree with the reasoning of the Maryland court. In an analysis of the instant case, there is no evidence that Debra's cohabitant was paying more than a fair share of monthly expenses, nor is there any evidence suggesting that Debra was not working to her present earning capacity. There was no evidence supporting a conclusion that Debra's cohabitant was making contributions gratuitously or without consideration such that the contributions might be considered gifts.

Our de novo review reveals no evidence in the present record to support a finding that the cohabitant's contributions constituted gift income, that income should be imputed to Debra based upon her earning capacity, or that application of the Guidelines would be unjust or inappropriate. In other words, Albert failed to meet his burden of proving that Debra's cohabitant's contributions should be included in her income under the Guidelines or that a deviation from the Guidelines was warranted. The district court's determination is reversed to that extent.

## Other Issues

In addition, we note that there are deficiencies in the record that have made it difficult to conduct our de novo review and analyze the issues presented. The district court's order modifying the decree specifically finds that Albert's contributions to his retirement plan are mandatory and then states that the court considered evidence "relating to [Debra's] health, her present employment and other income received" and "Section D of the Nebraska Child Support Guidelines relating to computation of total monthly income." The district court stated that a deviation from the Guidelines should be permitted because application of the Guidelines would be unjust and inappropriate and set Albert's child support obligation at $300.04 per month.

The record, however, does not contain worksheet 5, "Deviations to Child Support Guidelines," nor does it state how much child support Albert would have paid had the Guidelines

been applied. See, Guidelines, paragraph C; *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999). Instead, the record contains a completed worksheet 1, "Basic Net Income and Support Calculation," upon which the district court relied in setting Albert's support obligation. Despite the language in the district court's order stating that a deviation would be permitted, it does not appear that a deviation was actually included in the calculations underlying the district court's support award. Instead, the district court appears to have accepted Albert's calculation of his own income, including the deduction for his retirement plan contributions, and then accepted Debra's calculation of her income, but added $400 per month to include the compensation for expenses by Debra's cohabitant. This process does not include a deviation from the Guidelines, but instead resolves the issues presented within the Guidelines by applying the Guidelines to the incomes determined for each of the parties. It is under this assumption that we have analyzed the issues presented.

Furthermore, the district court admitted into evidence, without objection from either party, two different documents which each purport to be Albert's 1998 Schedule C, but which set forth different figures for Albert's expense deductions. We also note that the figure set forth for Albert's self-employment tax on what purports to be his 1998 Schedule SE is not consistent with the self-employment tax figure that Albert used in the calculation of his gross income for child support purposes, upon which the district court relied. A copy of Albert's 1998 Form 1040 is not in the record.

Exacerbating the confusion is the fact that the record does not indicate the source of some of the information set forth on the completed worksheet 1. For instance, the record does not show a basis for the deductions taken from Albert's gross income for federal and state taxes and FICA contributions. This is particularly perplexing because the record indicates that the district court's figure for Albert's income was calculated by subtracting retirement plan contributions and self-employment tax from the net income of Albert's business. From this figure, the district court subtracted FICA taxes, despite the fact that self-employment taxes are generally paid in lieu of FICA contributions. See, generally, *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537

(1999). The basis for deducting both self-employment and FICA taxes from Albert's income cannot be determined from the record.

Also troubling is the fact that the calculation of Albert's income deducted both his own contribution to his retirement plan, as well as Farm Bureau's matching contribution to the plan. Albert testified that this was because Farm Bureau's contribution to the plan was included in the gross income of his business upon which the subsequent calculations were based. Schobert agreed, and testified that Farm Bureau's contributions to the retirement plan were made by sending the money to the agent and including that money on the agent's Form 1099.

This does not appear to be consistent, however, with the testimony that Albert's retirement plan was tax deferred, because the figure from which Albert's income was calculated for child support purposes was taken from one version of his 1998 Schedule C, and no deduction for pension contributions appears on either of those documents in the record. No other document in the record shows that the contributions to Albert's retirement plan were deducted from his income for income tax purposes. Based on the record before this court, it appears that Albert may have voluntarily paid income taxes on a contribution to his retirement plan that should have been tax deferred or that Albert's retirement plan contributions may have been subtracted twice from his income in calculating his child support. Again, the record does not permit this court to resolve the ambiguity, given that Albert's 1998 Form 1040 is not in the record.

We do not find that plain error has occurred or that these questions presented by the record are themselves a basis for reversal. Indeed, the very problem is that the record is sufficient only to pose these questions, but not to resolve them. We suggest, however, as the cause must be remanded in any event, that the parties and the district court consider and resolve these questions after remand.

## CONCLUSION

The district court did not err in deducting Albert's individual contributions to his retirement plan when determining his net income for purposes of calculating child support, but did err in its inclusion of the contributions of Debra's cohabitant in

Debra's income. Consequently, the cause is remanded for a re-determination of Albert's child support obligation.

Upon remand, Albert's child support obligation should be modified based upon the principles set forth in this opinion, and absent equities to the contrary, the modification should be retroactive to the date that Debra's petition to modify was filed. See *Riggs v. Riggs*, 261 Neb. 344, 622 N.W.2d 861 (2001). In addition, the applicable worksheets required by the Guidelines should be completed so that the record reflects the basic computation under the Guidelines (worksheet 1) and any deviation therefrom (worksheet 5). The judgment of the district court is affirmed in part and in part reversed, and the cause is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.