IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

GEISE V. GEISE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

AMY ALLISON GEISE, APPELLANT,
V.
SHANE GLENN GEISE, APPELLEE.

Filed December 10, 2013.   No. A-12-855.

Appeal from the District Court for Sarpy County: DAVID K. ARTERBURN, Judge. Affirmed.

Christopher A. Vacanti, of Vacanti Shattuck, for appellant.

No appearance for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Amy Allison Geise appeals from the amended decree of dissolution of marriage entered by the district court for Sarpy County on August 28, 2012. She asserts the district court incorrectly calculated Shane Glenn Geise's income for the purposes of determining the correct amount of child support and awarding appropriate alimony. For the reasons that follow, we affirm.

## BACKGROUND

Amy and Shane were married February 3, 2000. Two children were born of the marriage, and at the time of the decree, they were 12 and 8 years old. Amy filed her complaint for dissolution of marriage on April 13, 2009. Amy sought sole custody of the two minor children and child support.

Shane was served with summons and a copy of Amy's complaint on April 20, 2009. On April 23, Shane filed his answer and cross-complaint.

- 1 -

On July 27, 2009, an order was entered awarding Amy temporary custody of the two minor children. The order required Shane to pay all expenses of the residence, including the rental or mortgage payments; all utilities, which included telephone, gas, electrical, and waste disposal; and an additional $200 per week. On August 5, an amended order for temporary allowances was entered. Shane was ordered to pay child support of $1,000 per month, and his obligation to pay the utilities of the residence ended in August. Shane continued to pay for the mortgage or rent on the marital property and paid at least the monthly minimum owed on any credit cards held jointly by the parties. Amy was ordered to pay the utility costs for the marital home commencing September 1.

Amy issued discovery on or about April 27, 2009. On October 8, 2010, Amy filed a motion to compel, alleging Shane refused to provide the discovery responses. The motion was granted, and Shane was given 2 weeks to complete discovery.

Amy filed a motion for sanctions on November 18, 2010, and sought an award of attorney fees and a determination by the trial court to limit Shane's ability to submit evidence at the time of trial. The court sustained the motion and ordered Shane to provide all credit card statements relevant to his income through his self-employment by December 3, 2010. The court scheduled a followup hearing on the motion for sanctions for December 6. The judge's minutes indicate the followup hearing was canceled per agreement of counsel.

Trial was held on February 2 and 7, 2012. Issues relating to the property distribution were settled by the parties prior to trial. Issues before the trial court included child custody and visitation, calculation of Shane's monthly income, child support, and alimony. A decree of dissolution of marriage was entered on April 26, based on the judge's letter with his findings dated February 16, 2012. Amy timely filed a motion for new trial and a motion to alter or amend the judgment on May 3. Hearing was held on June 18, and an order was entered generally overruling Amy's motions, except as related to submitting a new decree incorporating some information the trial court included in the February 16 letter that was not included in the original decree.

The amended decree of dissolution of marriage was entered August 28, 2012. Only the award of child support and the award of alimony are at issue in this appeal. Relevant to those issues, the trial court determined Shane was self-employed and the sole owner of a corporation known as Precision Lighting and Electric, LLC. Amy asserted the court should consider Shane's personal expenses, paid for through the business as Shane's personal income for the purposes of determining child support. Shane testified that some personal expenses are paid for through the business. Shane testified that he uses a business credit card, he carries insurance for himself and the children through the business, and the business pays rent to his parents to operate on their property. He also testified that the business pays for his cell phone and the fuel, licensing, and insurance for the business vehicle he drives.

Shane's sister, Cori Lund, is the bookkeeper for the business and for Shane's personal accounts. Lund testified that Shane's use of the business credit card is monitored and recorded in the business' "QuickBooks" system. She stated that the business calculates what expenses are considered to be Shane's personal expenses, that they are categorized in the "owner dividend" portion of the program, and that the owner dividend total is reported as income at the end of the year. She testified that Shane pays his parents for the use of their land. Shane personally pays

rent for the portion of the property on which he resides, and the business pays rent for the business use of the property. Lund testified that the business pays for Shane's family health insurance plan and that the full amount of the plan is added to his W-2 form at the end of the year.

The trial court determined there was insufficient evidence to allow a line-by-line analysis of whether the corporate payment of allegedly personal expenses occurred. The trial court determined that neither party was a qualified expert to testify on this issue, nor was Lund, who is Shane's sister and the bookkeeper for his corporation. The trial court determined Amy failed to meet her burden to prove the income reported in Shane's tax returns was inaccurate. The trial court used an average of Shane's taxable income to calculate the appropriate awards of child support and alimony.

The trial court awarded child support for two children at $1,375.52 and one child at $943.72 per month. The court ordered alimony of $1,500 per month for 12 months, $1,000 per month for 12 months, and $500 per month for 12 months.

## ASSIGNMENTS OF ERROR

Amy asserts the district court erred in determining Shane's income for calculating child support and erred in awarding inadequate alimony.

## STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determination of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of discretion. *Keig v. Keig*, 20 Neb. App. 362, 826 N.W.2d 879 (2012).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*Determination of Income.*

Amy's assigned errors rest on the assertion that the trial court erred in determining the amount of Shane's annual income. Shane's tax returns demonstrated a fluctuation in reported income. The trial court averaged Shane's income for 2009 and 2011, using this figure for the calculation of child support and the award of alimony.

The Nebraska Supreme Court has not set forth a rigid definition of what constitutes "income," but has instead relied on a flexible, fact-specific inquiry that recognizes the wide variety of circumstances that may be present in child support cases. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004); *Workman v. Workman*, 262 Neb. 373, 632 N.W.2d 286 (2001). Thus, income for the purpose of child support is not necessarily synonymous with taxable income. *Gangwish v. Gangwish, supra.*

A flexible approach is taken in determining a person's "income" for purposes of child support, because child support proceedings are, despite the child support guidelines, equitable in

nature. *Gangwish v. Gangwish, supra.* A court is allowed, for example, to add "in-kind" benefits, derived from an employer or other third party, to a party's income. See, *Workman v. Workman, supra*; *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998).

Amy asserts the trial court should have taken into account various "in-kind" benefits derived from the business when calculating Shane's yearly and monthly income. She offered evidence, including exhibits 15 through 18 delineating expenses paid for by Shane's business which she believed were personal in nature. She alleges these expenses were not included in Shane's calculation of his income. Amy testified that she did not have a forensic accountant review Shane's business records because she could not afford it.

Shane submitted exhibits 39 through 41, including explanations of the checks written by the business. Many entries noted that the amount a particular check was written for was included in Shane's W-2. Other entries noted that funds which were used to pay for Shane's personal expenses were paid back to the business from his personal account. Lund testified that some of the expenses paid for by the business were paid back to the business by Shane and that others were categorized in the business' bookkeeping system as "owner dividend" and were included in Shane's W-2 at the end of each year.

The trial court found the evidence was insufficient to allow a line-by-line analysis of whether the corporate payment of allegedly personal expenses occurred. The court stated that neither the parties nor Lund were qualified experts to state what is or is not a legitimate business expense under the federal tax code and accompanying rules. The court also noted that the tax returns received into evidence were prepared by professionals and that based on that evidence, the trial court determined the burden was on Amy to prove the tax returns were reported inaccurately. Accordingly, the trial court found Amy did not meet this burden.

As a general rule, the income of a self-employed person can be determined from his or her income tax return. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006), citing *Rhoades v. Rhoades*, 258 Neb. 721, 605 N.W.2d 454 (2000). The trial court determined there was evidence that Shane's income fluctuated from year to year, based on the performance of his business. Shane acknowledged that his income for 2010 was lower than he would normally expect, and he suggested that the average of his income for 2009 and 2011, two higher income years, be used for the purpose of calculating child support and of calculating alimony, if the court determined it was appropriate. The trial court used the average approach to determine that Shane's monthly gross income was $8,110.

The Nebraska Supreme Court has held that a court's findings regarding an individual's level of income should not be based on the inclusion of income that is entirely speculative. *Gress v. Gress, supra*. In addition, the Supreme Court has held when evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006).

Amy asserts "[s]pecial attention should be paid to Shane's repeated failure to produce any corporate book records, any corporate records responsive to Amy's discovery requests, and corporate records of financial and income statements . . . ." Brief for appellant at 19. She testified that Shane's failure to adequately answer discovery forced her to seek a motion to compel and sanctions.

A review of the record shows that Amy's motion to compel and motion for sanctions were sustained and that the trial court required Shane to provide certain documents relevant to his income. However, the record also shows that the followup hearing scheduled on the motion for sanctions was canceled per agreement of counsel and that there is no evidence to indicate Amy pursued further sanctions. Amy suggests she was hindered in her ability to prove Shane's true income, but she failed to pursue available remedies, and she also failed to present expert testimony to rebut or call into question the information that she did receive.

Amy's assertions that personal expenses were paid for by the business and not claimed as income were often directly contradicted by exhibits and testimony offered by Shane and Lund. As stated by the trial court, neither party presented a qualified expert to explain whether expenses were attributable to Shane personally or to the business.

Amy asserts Shane received "in-kind" benefits, and Shane asserts these benefits were counted as income or paid back to the company. Given the conflicting evidence in the record, we give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts over the other. In reviewing the evidence, we find it would have been speculative for the trial court to determine, based on the exhibits, which of Precision Lighting and Electric's expenses were business expenses and which were attributable solely to Shane. Further, the court would need to determine which of Shane's personal expenses were paid back to the company from his personal accounts and which were recorded in the business' bookkeeping system and included as income on Shane's W-2. To attribute these "in-kind" benefits to Shane as income would risk counting the benefits twice--once as included in a W-2 or paid back to the company and again as a benefit in addition to regular income.

Upon our review, we find the trial court did not err in using Shane's tax returns to calculate his monthly income, rather than attempting a line-by-line analysis of the "in-kind" benefits he allegedly received. Therefore, we find no abuse of discretion by the trial court in determining Shane's yearly income for the purpose of calculating child support and alimony.

*Child Support.*

The amended decree of dissolution reflects that the trial court determined Shane's income for child support purposes was $8,110 gross per month and that the trial court awarded child support for two children at $1,375.52 and one child at $943.72 per month.

Amy asserts she provided sufficient evidence of Shane's income for the trial court not to rely solely upon Shane's tax returns when calculating child support. She asserts that Shane paid for personal expenses through his corporation and that those funds should have been included in his taxable income for the purposes of determining child support.

Amy also asserts the trial court erred in allowing Shane a deduction for health insurance premiums without meeting his burden of submitting proof of the cost for health insurance coverage under Neb. Ct. R. § 4-215 (rev. 2011).

Having determined, above, that the trial court did not err in the calculation of Shane's monthly gross income, we now consider Amy's assertion that the court erred in allowing Shane a deduction for health insurance premiums paid on behalf of the children in the child support calculation.

Section 4-215(A) states that the parent requesting an adjustment for health insurance premiums must submit proof of the cost for health insurance coverage of the children. The parent paying the premium receives a credit against his or her share of the monthly support. The amount of the deduction is typically in the amount of the increased cost to the parent to cover the children. In this case, the trial court's child support calculation provides Shane a deduction for the children's health insurance in the amount of $230.48.

Amy's motion for new trial and to alter or amend the judgment alleges the court granted a deduction for health insurance premiums with no evidence to substantiate any costs associated with the children's coverage. Amy's motion was overruled without any specific findings on the issue of health insurance.

Upon our review of the evidence, we find it is undisputed that Shane provides health insurance coverage for the children. Amy testified that she has insurance through her employer and that this policy does not cover the children. She testified that Shane provides insurance for the children through his employer, and she attributed approximately $150 of Shane's premium to the children. She testified that she was not aware of the specific amount, so it was an estimate.

Precision Lighting and Electric's financial records and canceled checks were entered at trial. Shane entered exhibits describing the purpose for particular business checks which Amy asserts are personal in nature. For example, exhibit 40 notes all checks made to "IBEW" are added into Shane's personal W-2 and shown as income. Exhibit 40 also notes, for example, that check Nos. 2038, 2122, and 2181 are all written for health insurance and claimed as income. Each of these canceled checks can be found in exhibit 16 and are made out to "IBEW" for a total of $598, the total monthly premium for health insurance.

Shane testified at trial that $230.48 is the portion of his monthly premium attributable to the children and that the remainder is the amount paid to cover only himself. He included the $230.48 in his proposed child support calculation. He testified that the business pays for his insurance, but that it is claimed as income at the end of the year. Lund also testified that the health insurance premium for Shane and the children is included in his income at the end of the year.

Shane and Amy both provided evidence that Shane is responsible for payment of his children's health insurance premiums. Shane testified to the amount paid by the business attributable to the children, and this amount was confirmed by Lund's testimony. Amy offered no contradictory evidence in rebuttal. There is also evidence and testimony that the premium is included in Shane's yearly income. We find the trial court did not err in finding Shane should be allowed a deduction from his monthly income for the health insurance premiums paid on behalf of the children.

*Alimony.*

The trial court determined that an award of alimony was appropriate and used Shane's average monthly income again to determine the award of alimony. The court ordered alimony of $1,500 per month for 12 months, $1,000 per month for 12 months, and $500 per month for 12 months.

Amy asserts that the trial court erred when determining Shane's income and that this led to an award of alimony which is inadequate in amount and duration. Having determined that the

court did not err in determining Shane's income, we now consider the adequacy of the alimony award.

Neb. Rev. Stat. § 42-365 (Reissue 2008) provides, in relevant part:

When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

In determining whether an award of alimony is warranted, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000).

The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Id.* Alimony should not be used to equalize the incomes of the parties or to punish one of the parties. *Id.*

The record shows the court considered the above criteria when determining that the circumstances of the parties warranted an award of alimony. The court determined that Shane, the primary wage earner during the marriage, earned approximately $100,000 per year, while Amy earned $16 per hour working less than 40 hours per week. The court noted that during the marriage, the parties agreed she would stay home with the children, and that at the time of trial, Amy worked less than 40 hours per week so she would be able to be at home with the children when they returned from school. The evidence also indicates Amy has furthered her postsecondary education during the marriage, taking general courses. Additional education would be necessary to earn a degree, but further education would benefit Amy's future job prospects. The court recognized the disparity between the parties' future earning potential.

The trial court noted the parties married in 2000 and separated in 2009. The final decree was not entered in this case until 2012. During that time, Shane was under no obligation to pay alimony. However, according to the temporary order, he was responsible for the primary mortgage or rent on the marital property, where Amy resided with the children. This provision remained in effect until the entry of the decree. The total mortgage during this period amounted to $25,182.78, which was required to be paid to Amy before the end of 2012.

The trial court considered the evidence and found that an award of alimony was appropriate under the circumstances. It is well established that an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Kalkowski v. Kalkowski, supra.*

Amy asserts the award was inadequate in amount and duration. She further asserts that an "alimony award for thirty-six . . . months was markedly lower than what would be warranted for a marriage of this length." Brief for appellant at 40. However, the trial court determined that Amy received payments, in lieu of alimony, during the temporary period between the filing of the complaint for dissolution in 2009 and the trial in February 2012. Therefore, in essence, Amy

was provided support for approximately 3 years prior to the decree, and such support totaled over $25,000.

Upon our review of the evidence, we find the trial court did not err in awarding alimony in an amount and duration that was reasonable and appropriate under the circumstances.

## CONCLUSION

Upon our de novo review, we find the trial court did not err in calculating Shane's income. We find the court did not err in allowing Shane a deduction in the child support calculation for the health insurance premium he paid that was attributable to the children, and we find the court did not err in awarding appropriate alimony.

AFFIRMED.